O’NIEEL, J.
Plaintiff has appealed from a judgment dismissing his suit on an exception of no cause of action. The suit is to compel defendant to fence both sides of a so-called canal right of wáy, extending across plaintiff’s farm, to compel him to repair a bridge across the canal right of way, and to recover damages for his having taken down his fence at one end of the right of way, where it intersects a public road, allowing cattle to come' in and trespass upon the farm.
It is alleged in the petition that defendant owns the so-called right of way, 350 feet wide, extending entirely across plaintiff’s farm. Whether he owns the strip of land Itself, or only a right of way for maintaining an irrigation canal, is made doubtful £y the arguments and admissions in appellant’s brief. It is admitted that that part of the so-called right of way that extends across appellant’s farm is only a comparatively small section of what was once an irrigation canal route, 6r right of way, 350 feet wide and many miles long. Its use as a canal was abandoned and the canal company went out of business several years ago. However, for the purpose of determining whether appellant has ¿ cause of action to compel defendant to constiuet the fences and -maintain the bridge, we shall assume that defendant owns, not the strip of land itself, but only a canal right of way. It is admitted in appellant’s brief — and in fact it must be conceded — that he has no claim for damages if he has not the right to compel defendant to fence the so-called' right of way.
The pertinent facts alleged in the petition are as follows: In 1902, Hope Philips and the heirs of his deceased wife sold the farm, without any reservation or mention of any right of way across or upon it, to J. Franklin Schell. In 1903, Schell sold the entire farm, without any reservation or mention of a right of way across or upon it, to- the Union Rice & Irrigation Company. The company transferred the property to Schell, as trustee, and he, as trustee, in 1906, conveyed to a new corporation, styled Union Irriga *91 tion Company, the canal right of way, 350 feet wide, extending across the farm. In the deed of conveyance, the Union Irrigation Company obligated itself, its successors and assigns, to construct and maintaini a fence on each side of the canál right of way, and a bridge across the canal. The canal was constructed by making a levee along each side of the route, the bed of the canal being therefore almost, if not quite, as high as the adjacent farms. The canal was bridged where it divided plaintiff’s farm. Whether the bridge was built by the Union Rice & Irrigation Company or by the Union Irrigation Company is not alleged. The so-called right of way was never fenced. In 1914, Schell, as trustee for the Union Rice & Irrigation Company, sold the farm to the Union Irrigation Company; that is, the company that already owned the canal right of way.
It is contended’ by defendant, who now owns the right of way, that the obligation of the Union Irrigation Company to fence the right of way and to maintain a bridge across the canal was extinguished by the company’s becoming the owner of both the right of way and the farm itself. The Union Irrigation Company went into the hands of receivers, who, in 1915, sold the farm to H. P. Dart, Jr., and W. K. Dart, trustees. They sold the farm to Benjamin Riseman, in 1920, and he sold it to plaintiff in the same year. It is said in appellant’s brief that the1 receivers’ sale of the farm to the Darts, as trustees, was made subject to the canal right of way; but there is no such allegation in the petition, nor is it alleged that the sale by the Darts, as trustees, to Riseman, or the sale by him to plaintiff, was made subject to the canal right of way. It may be assumed, however, and we do assume, in deciding whether plaintiff has a cause of action, that the receivers of the Union Irrigation Company sold to the Darts, as trustees, only that part of the farm that was not embraced within the canal right of way, or route, 350 feet wide, dividing the farm. Two years after the sale of the farm to the Darts, as trustees, the receivers sold the canal right of way to J. W. Billingsley, from whom defendant acquired title, whether directly or through mesne conveyances is not alleged, and not important. It is said in appellant’s brief that Billingsley intended to operate the canal, from which, if the allegation were made in the petition, we would infer that Billingsley bought the entire canal route, manjr miles long. All of the deeds that we have mentioned were promptly recorded in the conveyance records.
When the Union Irrigation Company, being already the owner of the canal right of way, bought also the farm, the obligation of the company to fence the right of way and to maintain the bridge across the canal was extinguished. It is not alleged or contended that there was any contractual obligation or stipulation, in the subsequent sale of the right of way, or thereafter in the sale of the farm, to fence the right of way or to maintain the bridge across the canal.
When the Union Irrigation Company had bought the right of way, but had not yet bought the farm, the company’s obligation to fence the right of way and to maintain the bridge across the canal was an obligation in favor of the owner of the farm. Therefore, when the company itself became the owner of the farm, the obligation fell under article 2217 of the Civil Code, viz.:
“When the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation.”
The words “debtor” and “creditor” are-used as synonymous with “obligor” and “obligee,” according to the twentieth and twenty-first paragraphs of article 3556 of ■ the Code.
If the obligation to fence the right of way and to maintain the bridge across the canal1 *93 was a servitude imposed upon the right of way in favor of the adjacent farm, the obligation was extinguished as soon as the two estates had a common owner, according to the first paragraph of article 805 of the Code, viz.:
“Every servitude is extinguished when the estate to which it is due and the estate owing it are united in the same hands.”
The article last quoted is merely a repetition or an explanation of that part of article 783, enumerating the seven means by which servitudes may be extinguished, which declares: “Servitudes are extinguished: * * * (3) By confusion. '* * * ”
Counsel for appellant argues that a servitude that is extinguished by confusion is revived if the two estates are afterwards separated in ownership, provided the confusion has not lasted long enough to extinguish the servitude by prescription; that is, 10 years, according to articles 789, 8529, and 3546. See Frost-Johnson Lumber Co. v. Salling’s Heirs, 150 La. 756, 91 South. 207. Hence it is argued that confusion, or common ownership of the two estates, does not really extinguish, but merely suspends, the servitude. In support of the argument, counsel cites article 785 of the Code, viz.:
“If the things are re-established in such a manner that they may be used, the servitudes will only have been suspended, and they resume their effect, unless, from the time they ceased to be used, sufficient time has elapsed for prescription to operate against them.”
That article refers only to servitudes that have been extinguished or suspended by the first method mentioned in article 783; that is, by the destruction of either of the two estates, or by such a change in the condition of either estate that the servitude cannot be exercised. Article 783 is the first of the series of articles constituting section 5, entitled “How Servitudes are Extinguished.” Immediately following that article are the articles explaining in full and dealing with, respectively, each of the seven means of extinguishing servitudes. Articles 784-788 explain (1) extinguishment by destruction of either estate; articles 789-804 explain (2) extinguishment by prescription; articles SOS-812 explain (3) extinguishment by con fusion; articles 813-815 explain (4) extinguishment by abandonment of the estate that .owes the servitude; articles 816-820 explain (5) extinguishment by a voluntary release or renunciation on the part of the owner of the estate to which the servitude is due; article 821 explains (6) extinguishment by expiration of the term for which the servitude was established or by the happening of an event the occurrence of which was stipulated as a condition on which the servitude should terminate; and article 822 explains (7) extinguishment by the destruction or limitation (ab initio) of the right of the person who granted the servitude. The arrangement of these articles explaining “How Servitudes are Extinguished” is such, and the language is so plain, that it leaves no doubt whatever that each set of articles deals exclusively with one specified means by which servitudes are extinguished. Articles 784-788 have nothing whatever to do with extinguishment by confusion, or with any other means of extinguishment than extinguishment by destruction of either estate, or by such a change in the condition of either estate as to prevent an exercise of the servitude. If such a condition of either estate is only temporary, a re-establishment of the original condition of the estate will revive the servitude, which will then be regarded as having been suspended, not extinguished. That is the plain and simple language of articles 784-788.
It is said in appellant’s brief that the sale by Hope Philips to J. Franklin Schell was made on terms of credit; that the price, or a part of it, was represented by Schell’s promissory notes, which were secured by vendor’s lien, and which passed into the hands of third parties; that the subsequent *95 sale of the farm by the receivers of the Union Irrigation Company to the Messrs. Dart was made subject to an order of the court recognizing the vendor’s lien; and that the Messrs. Dart were the attorneys foiv the holders of the vendor’s lien notes. There are no such allegations in plaintiff’s petition. If such allegations had been made, they would not warrant the conclusion that the receivers’ sale had the effect of reviving the alleged servitude upon the canal right of way in favor of the adjacent farm. If there was a vendor’s lien resulting from the sale made by Hope Philips to I. Franklin Schell, the lien affected the property as a whole, including that part which was afterwards sold by Schell as a canal right of way, because the sale by Philips to Schell was made before the farm was divided in ownership, or before the alleged servitude was created. If the title to the farm had been taken from the Union Irrigation Company by, a forced sale made in foreclosure of the vendor’s lien, the purchaser would have acquired a complete title for the entire farm, and there would have been no revival of a servitude on one part in favor of another part of it. Under such circumstances, article 806 of the Code, cited by appellant’s counsel, would not be applicable. That article declares merely that if, in a joint ownership of two estates, one of which previously owed a servitude to the other, the title of the common owner be conditional or defeasible as to either estate, the confusion or joint ownership only suspends the servitude until the happening of the condition, or until the eviction of the holder of the defeasible title. The article mentions, in illustrating how a servitude that has been only suspended by confusion may be revived: (1) The case of a person’s exercising a right of redemption of a title held by the common owner; (2) the happening of a condition under which the title to one of the estates was to be forfeited by the common owner; ' (3) the ease of an heir’s being evicted from one of the estates by a nearer relation, or heir at law of the deceased; and (4) the case of an abandonment or relinquishment of the common owner’s title to either estate on account of a mortgage upon it. This last illustration, of course, refers only to a mortgage bearing upon only one of the two estates and antedating the sale that effected the confusion and consequent suspension of the servitude.
Even if the alleged obligation to fence the canal right of way and to maintain the bridge across the canal had not been extinguished by confusion, we doubt that plaintiff would be entitled to the relief prayed for in this case; that is, that defendant should be condemned to construct and maintain a fence on each side of the canal right of way and to maintain the bridge across the canal. There is no prayer, specifically, for a mandatory injunction, and we doubt that it would affect the situation if there were such a prayer. An appropriate demand for enforcing the obligation, if it existed yet, would be that defendant should be condemned to pay the cost of fencing the right of way and of repairing the bridge, or surrender the property subject to the alleged servitude. Article 655 of the Code declares that one of the essential elements or characteristics of a servitude is that it does not oblige the owner of the estate subject to it to do anything, but merely obliges him to abstain from doing a particular thing or to permit it to be done on his estate. And article 775 declares that, even when the owner of the estate that owes the servitude is bound by his title to construct, at his own expense, whatever is necessary for the use and preservation of the servitude, he may, at any time, relieve himself of the obligation by giving up the estate that owes the servitude to the owner of the estate to which the servitude is due. All of which is consonant with *97 article 783, No. 4, and articles 813-815, providing for the extinguishment of servitudes by abandonment of the estate that owes it.
Our conclusion, however, is that the alleged obligation was extinguished by confusion when the owner of the canal right of way became also the owner of the farm to which the obligation was due.
The judgment is affirmed, at appellant’s cost.
Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.