(132 So. 511)

**SAMPLE et al. v. WHITAKER et al.**
No. 30850.

Jan. 5, 1930.

Lee & Gilmer, of Shreveport, for appellants.

Frank J. Looney, of Shreveport, for appellees.

O'NIELL, C. J.

The plaintiffs sued to be declared the owners of the mineral rights in a tract of land belonging to the defendant, Isaac Whitaker, and described as the S½ of NE¼ of section 5, township 13 north, range 13 west, containing 80 acres. S. G. Sample, one of the plaintiffs, bought the land from O. H. P. Sample on the 29th of November, 1902, during the existence of the community of acquets and gains between S. G. Sample and his first wife, Mrs. Emma McCrory Sample. He sold the land to York Whitaker, Jr., on the 20th of November, 1911, with the following reservation, viz.:

"It is agreed and understood, however, that the vendor herein reserves all of the oil, gas or other minerals under the surface of said land, with the right to go in and upon said land at any time, for the purpose of mining, drilling and operating thereon for the purpose of exploiting for such minerals, and, in the event of the discovery of any such minerals, to mine and produce the same, with the necessary right, at any and all times, of ingress and egress for such purposes. And it is also agreed and understood between the parties hereto that the reservation of the minerals and the rights in connection therewith shall extend to the heirs, successors or assigns of the said vendor."

The rights which where thus reserved, in the sale by S. G. Sample to York Whitaker, Jr., belonged to the marital community existing between S. G. Sample and Mrs. Emma McCrory Sample. She died, intestate, in September, 1918, leaving seven minor children, issue of the marriage with S. G. Sample. Each child, therefore, inherited $\frac{1}{14}$ interest in the mineral rights on Whitaker's land. One of the children, S. G. Sample, Jr., died, intestate, in December, 1927; and, there being no descendant heirs, his father inherited ¼ of his $\frac{1}{14}$ interest in the mineral rights, and the six surviving brothers and sisters each inherited ⅙ of ¾ of the $\frac{1}{14}$ interest in the mineral rights. Rev. Civ. Code, arts. 904 and 911. S. G. Sample therefore claims in this suit ½ plus $\frac{1}{56}$, or $\frac{29}{56}$, and each of the remaining six heirs of Mrs. Sample claims $\frac{1}{14}$ plus ⅙ of ¾ of $\frac{1}{14}$, or $\frac{9}{112}$, of the mineral rights in the defendant's land.

The plaintiffs in this suit are two of the daughters and a son of S. G. Sample, who are of age, and S. G. Sample individually and as tutor of the daughter and two sons who are yet minors.

On the 21st of November, 1911, York Whitaker, Jr., sold the land to Isaac Whitaker, without any reservation or mention of the mineral rights. Isaac Whitaker is therefore the principal defendant in the suit. He contends that the sale made by Sample to York Whitaker, Jr., was made in fulfillment of a contract of lease and promise to sell, dated the 30th of November, 1906, by which Sample was obliged to transfer to him a fee simple title to the land, on York Whitaker's paying the rent at $180 per annum for five years, which rent was paid in full; and that York Whitaker, Jr., being an ignorant colored man, hardly able to read and write, and not represented by an attorney, was not informed or aware that the deed which he received from Sample contained a reservation of the mineral rights, and that he (York Whitaker, Jr.) was deceived and imposed upon in that respect. Isaac Whitaker pleaded also the prescription of ten years, liberandi causa, under articles 789, 3529, 3544 and 3546 of the Civil Code, by which servitudes or real rights are lost or extinguished by nonuse for ten years.

The district court sustained the plea of prescription and rejected the plaintiffs' demand. They have appealed from the decision.

When the case was called for argument in this court, the attorney for the defendants announced that he would file a plea of prescription acquirendi causa, under article 3478 of the Civil Code, as amended by Act No. 64 of 1924, p. 91. The plea was not actually filed, however, until the case had been argued and submitted. The attorneys for appellants filed, at the same time, a protest against the filing of the plea of prescription after the case had been submitted, and, in the alternative, they pleaded that, if the court should hold that the plea of prescription was not filed too late, then that the Act No. 64 of 1924 was unconstitutional because it undertook to change the law of prescription and to take effect immediately; and, again in the alternative, they prayed that the case should be remanded for a hearing on the plea of unconstitutionality, if the court should hold that the plea of prescription was not filed too late and that the plea of unconstitutionality could not be considered originally by this court.

The plea of prescription acquirendi causa is the most important defense to the suit, for, if it was not filed too late, and is well founded, it will not be necessary to decide whether the term of prescription liberandi causa was suspended during the minority of the heirs of the deceased Mrs. Sample, or, if so, whether the effect was to suspend the running of prescription as to S. G. Sample, or to consider the other defense to the suit. The facts disclosed by the record, as far as they go, sustain the plea of prescription acquirendi causa. The sale of the property to the defendant Isaac Whitaker was made eighteen years before this suit was filed. It was alleged in the plaintiff's petition that Isaac Whitaker was in actual or physical possession of the property. It was proven on the trial that he had been residing on the property for twenty-four years; and it was stated by counsel for plain-

tiffs, in the examination of the witnesses in this case, that Isaac Whitaker was residing on the property at the time of the trial. It was also admitted that there had not been any attempt to drill for oil or gas or other minerals on the land until the year 1930; and this suit was filed on the 6th of May, 1930.

The first question to be considered, therefore, is whether we should consider the plea of prescription acquirendi causa as being filed in time, and remand the case for the hearing of further evidence on the subject, and for a consideration of the plea that Act No. 64 of 1924, which declares that the prescription of ten years, acquirendi causa, shall not be interrupted in favor of any minor heir of a person against whom it has begun to run, is unconstitutional.

Article 902 of the Code of Practice provides:

"Although in general parties before the Supreme Court are not allowed to plead other matters than those which were before the inferior court, nevertheless it may depart from this rule, when the exception taken is one of those which may be pleaded at any period of a cause, and the proof of it appears by the mere examination of the record.

"The prescription may be pleaded before the Supreme Court when the proof of it appears on the face of the proceeding in the lower court. But the party to whom it is opposed shall have the privilege of demanding that the cause be remanded for trial upon that plea."

The plaintiffs cite the case of O'Hara v. City of New Orleans, 30 La. Ann. 152, and State ex rel. Hundley v. City of Alexandria, 164 La. 624, 114 So. 491, in support of their argument that a plea of prescription or other peremptory exception cannot be filed in the appellate court after the case has been submitted. In O'Hara's Case, it was decided that

his claim was not well founded; hence there was no necessity for considering whether the plea of prescription was filed in time, or whether it was well founded. In Hundley's Case, the defendant filed in this court, after the case was submitted, not a peremptory exception, but a motion to have the case remanded for the purpose of hearing evidence on a new issue, or defense, pertaining to the merits of the case. The decisions cited, however, do announce the general rule that it is too late to file a peremptory exception in the Supreme Court after the case has been submitted. The present case is exceptional, not only because the evidence in the record, as far as it goes, tends to sustain the plea of prescription acquirendi causa, but also because the attorney for the defendant Isaac Whitaker announced before the argument was begun that he would file the plea of prescription acquirendi causa, and stated that he assumed that he might file it as effectively after as before the argument; to which statement the court made no response. It is quite likely, therefore, that the attorney took it for granted, from our silence, that he might file the plea of prescription as well after as before the argument of the case. Considering the peculiar circumstances of the case, therefore, we have concluded to consider the plea as if it had been filed before the case was argued, and to remand the case to the district court to permit the offering of further evidence in support of the plea and in opposition to it, and to permit the plaintiffs to urge in the district court their plea that Act No. 64 of 1924 is unconstitutional. By the remanding of the case, it will be made certain that the plaintiffs will not have been put to any disadvantage by the filing of the plea of prescription acquirendi causa after, instead of before, the argument and submission of the case. In the exercise of our discretion in respect to the payment of costs, we shall condemn the defendants, appellees, to pay the costs of the present appeal, and leave the question of liability for all other court costs dependent upon the final disposition of the case.

██ In a supplemental brief filed by counsel for the appellants, it is contended that the prescription of ten years, acquirendi causa, under article 3478 of the Civil Code, as amended by Act No. 64 of 1924, cannot have the effect of releasing a servitude or other real right, by confusion, so to speak; and, in support of the argument, several decisions by the Cour de Cassation, construing article 706 and 2265 of the Code Civil, are cited. Article 706 of the French Code corresponds with article 789 of the Louisiana Code, except that article 706 of the French Code declares that the servitude is extinguished by non-usage during thirty years, viz.: "La servitude est éteinte par le non-usage pendant trente ans." Whereas, article 789 of the Louisiana Code declares that a right to a servitude is extinguished by the non-usage of the same during ten years. Article 2265 of the French Code corresponds with article 3478 of the Louisiana Code, except that article 2265 of the French Code declares that he who acquires an immovable in good faith and by a just title prescribes the ownership of it in ten years if the true owner lives in the jurisdiction of the royal court (the court of appeal) within the limits of which the immovable is situated, and in twenty years if he is domiciled out of that jurisdiction; whereas, article 3478 of the Louisiana Code, without making any distinction in favor of nonresident owners, declares that he who acquires an immovable in good faith and by a just title prescribes for it in ten years. The reason why the Court of Cassation held that servitudes could not be extinguished by the prescription acquirendi causa, under article

2265 of the French Code, is that article 706 declares that it requires thirty years of non-usage to extinguish a servitude by prescription. But that reason is not applicable to the provisions of the Louisiana Code, because the time required for the extinguishment of a servitude by prescription liberandi causa, for nonuse, is not longer than the time required for acquiring ownership by prescription acquirendi causa, by possession in good faith and under a just title. That is explained in the decisions cited. For example, in Cour Royale, de Metz, July 2, 1846, Journal de Palais, vol. II, 1846, page 512, the ruling (translated) was: "The release, or extinguishment, of a servitude can not be acquired by the prescription of ten or twenty years by title and good faith. Article 706 Code Civil constitutes a special law for servitudes." The ruling by the Court of Cassation, of the 18th of November, 1845, reported in Journal de Palais, vol. I, 1846, page 518 (translated), was: "Article 2265 Code Civil, according to which the one who acquires an immovable in good faith and by a just title prescribes the ownership of it in ten years, is not applicable to the extinction by non-usage of a servitude for taking water. This non-usage must continue for thirty years. Code C., 706." The decision by the Court of Cassation, of the 31st of December, 1845, Journal de Palais, vol. I, 1846, page 40 (translated), was: "The ten years prescription established by article 2265 Code Civil, in favor of possessors in good faith and by a just title, has for its object only immovable properties, and not the release of real obligations with which they may be burdened. In the matter of servitudes, it is Art. 706 Code Civil which states the general and absolute rule, and to which reference must be made to determine the lapse of time by which they may be extinguished; and, this article fixing the term of prescription at thirty years, the decree which has applied article 2265 to the extinguishment of a right of pasturage (a discontinuous servitude) must be set aside." To the same effect were the decisions in Journal de Palais, vol. II, 1853, p. 495, and Journal de Palais, 1876, p. 251, November 23, 1875.

If the Civil Code of Louisiana declared that it required thirty years of nonuse, or any other period exceeding ten years, to extinguish a discontinuous servitude, it would be illogical to hold that such a servitude could be extinguished by the prescription of ten years. But, when there has been a nonuse of the discontinuous servitude for the time necessary to extinguish it by the prescription liberandi causa, there is no reason why it should not be extinguished by confusion, so to speak, by the holder of an apparently valid title for the whole property, in good faith, remaining in undisturbed possession of the land for ten years—if, because of the minority of the owner of the servitude, the prescription liberandi causa has been suspended.

There would never be any occasion for applying the prescription of ten years acquirendi causa to the extinguishment of a servitude, or real right, except for the fact that it is doubtful that the prescription liberandi causa, under article 789 of the Code, runs against minor children, and the prescription of ten years acquirendi causa, under article 3478, as amended by Act No. 64 of 1924, does run against the minor heirs of one against whom it has begun to run. It was intimated in the decision of the case of Palmer Corporation v. H. W. Moore (La. Sup.) 132 So. 229,[1] that the prescription liberandi causa, by which servitudes are extinguished, under article 789, might be effective against a person of the age of majority, owning the servitude jointly with a minor heir of a deceased co-owner. But we

---

[1] Ante, p. 774.

declared that we refrained from sustaining the plea of prescription liberandi causa, under article 789, because we found that the plaintiff's action was barred by the prescription of ten years, acquirendi causa, under article 3478, as amended by Act No. 64 of 1924. In the case of Sanders v. Ohio Oil Co., 155 La. 740, 99 So. 583, we pointed out that the only cases in which prescription ran against minor children were specified in article 3541 of the Code, in the section dealing with prescription liberandi causa, and that the only prescriptions specified were those of one, three and five years. For that reason we doubt that the prescription of ten years, liberandi causa, under article 789 of the Code, is effective against minor children; and article 802 declares that, if among the coproprietors there be one against whom prescription can not run, as, for instance, a minor, he shall preserve the right of all the others. In Palmer Corporation v. H. W. Moore, we observed that article 802, as explained in articles 801 and 803, was applicable to predial servitudes only; but it is argued now with great force that these articles are merely declaratory of a general principle, to the effect that, as to an indivisible real right, or servitude, if the prescription is suspended as to one of several joint owners of the right, it is suspended as to all of them. Be that as it may, the decision rendered in Palmer Corporation v. H. W. Moore is authority only for the proposition that a discontinuous and nonapparent servitude, or real right, may be extinguished, by confusion, so to speak, by the prescription of ten years acquirendi causa, under article 3478 of the Civil Code. In that respect, it must be borne in mind that the case of Sanders v. Ohio Oil Co. arose before article 3478 of the Code was amended so as to affect minor children; and it was so stated in the opinion rendered in the case.

█ It is also pointed out in appellants' supplement brief that article 766 of the Civil Code declares that a discontinuous servitude, such as a mineral right or reservation on the land of another, cannot be acquired by prescription, but only by a title. That, of course, has reference only to the acquiring of a servitude on the land of another person, other than the one claiming the servitude. It has nothing to do with the extinguishment of a servitude. Article 783, subd. 3, provides that a servitude may be extinguished by confusion; which is defined in article 805 as being the result of the owner of the estate owing the servitude becoming the owner also of the estate to which the servitude is due. The reason for the extinguishment of the servitude in such a case is that an estate can not owe a servitude to its owner, or to another estate belonging to one and the same owner. By the same token, confusion extinguishes a personal servitude, or real right, when the owner of the estate owing the servitude becomes the absolute and fee simple owner of the estate. Dufilho v. Bordelon, 152 La. 88, 92 So. 744. That is what a possessor in good faith and under a just title does when he acquires an absolute and fee simple title by the prescription of ten years, under article 3478 of the Civil Code. As we said in Palmer Corporation v. H. W. Moore, inasmuch as a person who has no title whatever may convey, to a buyer in good faith, a so-called "just title," which may form the basis for the prescription of ten years acquirendi causa, it would be unreasonable to hold that an owner of land, subject to a real right, or nonapparent and discontinuous servitude, cannot convey to a buyer in good faith a title which may form the basis for the prescription of ten years acquirendi causa. In that respect, it matters not whether the mineral rights on the land of a person other than the owner of the mineral

rights be called a servitude, or a real right, or an element or dismemberment of the ownership of the property; the fact being that the oil and gas at large beneath the surface of the earth are not subject to ownership as tangible or physical property, and hence a deed purporting to convey or to reserve the oil or gas beneath the surface of the land of another person conveys or reserves, as the case may be, nothing more than the right to explore for such minerals and to become the owner of such as may be found and reduced to possession. That, being an incorporeal right—a right in the property—is, essentially, one of the elements or constituent parts of the ownership of the property.

It is said in the supplemental brief for the appellants that it was held in Smith v. Johnson, 35 La. Ann. 943, that the prescription of ten years acquirendi causa could not have the effect of extinguishing a mortgage, notwithstanding it had been held in Lanusse v. Minturn, 11 La. 256, that the prescription of ten years acquirendi causa could have the effect of extinguishing a mortgage. The prescription acquirendi causa was not pleaded or discussed in Smith v. Johnson. The only prescription pleaded was the prescription liberandi causa, under articles 3528 and 3529 of the Civil Code. Article 3528 is the one which declares that the prescription which operates a release from debts discharges the debtor, by the mere silence of the creditor during the time fixed by law, from all actions, real or personal, which might be brought against him. And article 3529 adds that this prescription has also the effect of releasing the owner of an estate from every species of real rights to which the property may have been subject, if the person in possession of the right has not exercised it during the time prescribed by law. The basis of the ruling in Smith v. John-

son was that the term "real rights," as used in articles 3528 and 3529, meant proprietary rights, such as a right of servitude, as distinguished from merely pignorative rights, such as a mortgage. Mr. Justice Fenner, for the court, said:

"To this demand the defendant opposed:

"1. The prescription of ten years as a bar to the action under Arts. 3528, 3529, C. C.

"2. The peremption of plaintiff's mortgage by failure to reinscribe the same within ten years from the date of its original inscription in 1869.

"I. The question whether the prescription of ten years declared by Art. 3529, C. C., applies to the hypothecary action against the third possessor of property, has been the shuttlecock of our jurisprudence.

"The Article declares, that: 'This prescription has also the effect of releasing the owner of an estate from every species of real rights to which the property may have been subject, if the person in possession of the rights has not exercised it during the time required by law.'

"In the case of Lanusse v. Minturn, 11 La. page 256, the Court held, that this prescription barred the hypothecary action against the third possessor. * * *

"We are satisfied that the 'real rights,' referred to in Art. 3528, do not include mortgages, but only such real rights as are evidenced and preserved by their exercise. The contention that mortgages are included therein requires too much, since it would make the prescription applicable to all actions to enforce mortgages, whether against property in hands of original mortgagees [meaning mortgagors] or against third possessors. The construction contended for is equally inconsistent with our registry laws. Of what use would it

be to reinscribe mortgages at the end of ten years, for the purpose of keeping the mortgage alive, when, by the mere lapse of the ten years, regardless of reinscription, the action to enforce the mortgage is prescribed?"

In Lanusse v. Minturn, 11 La. 260, we find this significant expression:

"If this were a petitory action, and the defendant had set up prescription acquirendi causa, however valid may have been the title of the plaintiff originally to the property itself, and however superior to that of the defendant, we have no doubt the plea must have prevailed, because the defendant holds under a title translative of property, and in good faith. How is it when the plaintiff asserts only a real right in the thing and seeks to have the property sold for her benefit? Independently of all positive authority on the subject, it would seem as clear as that the greater includes the less, that if she could not recover the property in a real action, she could not a fortiori, enforce any real right in it, when the prescription liberandi causa is opposed to her."

In Adle v. Prudhomme, 16 La. Ann. 343, the court again ruled: "The hypothecary action against the third possessor, who holds in good faith, by a title translative of property, is prescribed by the lapse of ten years. C. C. 3442; [Lanusse v. Minturn], 11 La. 256." Article 3442 [which is now 3478] is the one which declares that he who acquires an immovable in good faith and by a just title prescribes for it in ten years. That is the prescription acquirendi causa. In Gentes v. Blasco, 20 La. Ann. 403, on rehearing, the court held that the rulings in Lanusse v. Minturn and Adle v. Prudhomme were not applicable. Mr. Justice Taliaferro, for the court, said:

"The prescription acquirendi causa, as laid down in Lanusse v. Minturn, avails a posses-

sor as owner under a title translative of property, and whose possession for ten years has been public and uninterrupted, to prescribe against adverse titles and claims involving the question of ownership. But how does he escape the effect of mortgages against the property which have been revived and continued in force by reinscription? Take the case of a recorded judgment bearing by a law a judicial mortgage. * * *

"Art. 3508 [now 3544] is restricted to personal actions. The term 'real rights,' used in Art. 3495 [now 3529] cannot properly be construed to embrace the mortgage right. Such a construction would bring it in conflict with the Art. 3413 of the Code, which attaches the judicial mortgage to recorded judgments, and with the act of 1853, which allows judgments to be revived and continued in force for an indefinite period of time."

It is plain, therefore, that the decisions to the effect that a mortgage is not a "real right," within the meaning of articles 3528 and 3529 of the Civil Code, are not inconsistent with the ruling which we made in Palmer Corporation v. Moore (No. 30,945) 132 So. 229,[1] and which we adhere to in this case, to the effect that a real right, such as a nonapparent and discontinuous servitude, may be lost by the prescription of ten years acquirendi causa.

For the reasons stated, it is ordered that this case be remanded to the district court, to be reopened for the purpose of receiving evidence on and deciding the plea of prescription of ten years acquirendi causa, and for the purpose of considering and deciding the question of constitutionality or unconstitutionality of Act No. 64 of 1924, p. 91. The defendants, appellees, are to pay the costs of the present appeal. The question of liability for other

---

[1] Ante, p. 774.

court costs, heretofore or hereafter incurred, shall depend upon the final disposition of the case.

(132 So. 516)