353 So.2d 462 (1977)
Clyde J. MIRE et al., Plaintiffs-Appellees,
v.
CHEVRON OIL COMPANY et al., Defendants-Appellants.
No. 6217.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1977.
Rehearing Denied January 12, 1978.
Writ Refused February 24, 1978.
*463 William H. Mouton, Lafayette, Aaron, Aaron & Chambers by Noble M. Chambers, Jr., Crowley, for defendants-appellants.
Edwards, Stefasnki & Barousse by Homer Ed Barousse, Jr., Crowley, Pugh, Buatt, Landry & Pugh by Lawrence G. Pugh, Jr., Crowley, for plaintiffs-appellees.
Before CULPEPPER, GUIDRY and FORET, JJ.
FORET, Judge.
This is an action for cancellation of an oil, gas and mineral lease, for recovery of royalties, and for damages. Suit was filed by Clyde J. Mire, Melvin Mire, Nellie Jane Mire Holloway, Bonnie Mire Miller, and Gloria Boudreaux Hanks against Chevron Oil Company, Exxon Corporation, Curtis Mire, Melteris Mire, Percy Mire, and Erick M. Mire.[1]
After answering the petition, Chevron and Exxon filed a motion for summary judgment which was overruled by the trial judge. Trial was held before a civil jury which rendered the following verdict:
"We, the Jury, find: in favor of Clyde J. Mire, et al, and further:
(1) Confusion did not take place in 1965: 12-0 vote
(2) In 1967, each owned 100% of mineral rights under whatever land he ownedvote: 12-0

*464 (3) Cancel lease due to bad faith on Chevronvote: 12-0
(4) Damages in amount of $100,000 to plaintiffvote: 11-0, with one abstention."
Judgment in accordance with the jury verdict was rendered and signed, and defendants have perfected this appeal. We reverse.
The record reveals that Erise Mire, father and grandfather of the individual plaintiffs and defendants herein, executed a donation inter vivos on December 14, 1957, to Cleveland Mire, Curtis Mire, Melteris Mire, Percy Mire, Curley Mire, Mable Mire, Clyde Mire and Erick Mire donating to them the following:
". . . the following mineral interests in the proportions of an undivided one-eighth (1/8) interest therein to each, to-wit: (a) Eight-ninths (8/9) of the oil, gas, and other minerals, in, on, under and that may be produced from the following described land, to-wit:
A certain tract of land, situated in Section Five, Township Nine South, Range Three East, (Sec. 5, T. 9 S., R. 3 E.), Louisiana Meridian, Acadia Parish, Louisiana, containing One Hundred Twenty-six (126) acres, more or less, bounded, now or formerly, North by Sully Babineaux and Joseph Lantier, South by the tract next hereinbelow described, East by Joseph Lantier and Francois Thibodeaux and West by Veon Mire, Dupre Mire and Isidore Prejean.
(b) One-half (½) of the oil, gas and other minerals, in, on, under and that may be produced from the following described land, to-wit:
A certain tract of land, situated in Section Five, Township Nine South, Range Three East (Sec. 5, T. 9 S., R. 3 E.), Louisiana Meridian, Acadia Parish, Louisiana, containing Sixty (60) acres, more or less, bounded, now or formerly, North by the tract of land next hereinabove described, South by Francois Thibodeaux and Onezia Mire Credeur, East by Francois Thibodeaux and West by Veon Mire, Dupre Mire and Isidore Prejean."
Subsequently, on June 4, 1965, Erise Mire executed another donation inter vivos by which he donated unto the above named eight children the surface rights to 153.644 acres, the same property which was involved in the mineral right donation hereinabove mentioned. In the June 4 donation, however Erise Mire reserved and excepted from the donation, all of the oil, gas, and other minerals and mineral royalties, in, under, and pertaining to the donated property, specifically stating that this was a full and complete mineral reservation as distinguished from a simple royalty reservation. Of course, he could not reserve in 1965 more than the mineral interest he had reserved in the 1957 donation; viz, 1/9 on one tract and ½ on the other.
On the same day, that is June 4, 1965, before the same notary, the eight children of Erise Mire partitioned the property donated to them by their father. The donated tract was divided into eight lots numbered respectively lots one through eight as shown by a plat of survey dated May 27, 1965. Melteris Mire received Lot 1; Percy Mire, Lot 2; Curtis Mire, Lot 3; Curley Mire, Lot 4; Cleveland Mire, Lot 5; Erick Mire, Lot 6; Mable Mire, Lot 7; and Clyde Mire, Lot 8. In that partition agreement amongst the eight children was the following provision concerning the minerals underlying the property partitioned:
"This exchange and partition is made subject to and in accordance with the following reservations, stipulations and conditions, to-wit:
The parties hereto do not divide or partition the oil, gas, or other minerals and mineral royalties in, under, and relating to said tract of land but on the contrary leave same in indivision with each party hereto retaining his or her virile and prorata [sic] interest therein without change."
On May 31, 1968, the eight children, along with their father Erise Mire, executed a mineral lease, unto one Jesse E. Tyra, on the property involved herein. That lease *465 was subsequently assigned to Chevron, which subsequently assigned part of its interest to Exxon. Oil and gas were discovered in the area, and on January 18, 1970, by order of the Louisiana Commissioner of Conservation, a compulsory drilling unit was created known as the Guilbeau-Kahn Unit. A pre-existing well, which was off of the 160-acre tract, and which produced minerals in paying quantities, was the unit well. However, only part of the original 160-acre tract of land owned by the litigants herein was included in the unit. Some of the children had more acreage in the unit than others, and this is the fact which has caused this dispute.
In their petition, plaintiffs allege that they are entitled to a greater share of the production from the unit than their brothers and uncles named as defendants, and prayed for lease cancellation and damages due to Chevron's and Exxon's failure to pay them their proper share of the royalties. Chevron and Exxon had paid to each of the owners of the eight tracts of land an equal amount of mineral royalties from the production of the unit. Plaintiffs claim that the mineral servitude created in their favor by the act of donation of 1957, prescribed for ten years non-user in 1967; and since production did not commence until after 1967, that each owner of the eight lots of land is the sole owner of the surface and mineral rights of their respective properties; and that the owners of the other lots are not entitled to participate in the oil revenues produced from the plaintiffs' properties.
Defendants contend that the mineral servitude created by the 1957 donation was extinguished by confusion by the 1965 act of donation; that the language in the partition agreement whereby the eight partitioners declared that they did not wish to divide the oil, gas and other minerals, but on the contrary, to leave the same in indivision "with each party hereto retaining his or her virile and prorata [sic] share therein without change" created a new mineral servitude; that a new ten-year prescriptive period began to run as of June 4, 1965; and that since the production involved herein is well within that ten-year period, that each of the owners of the individual eight tracts of land is entitled to participate equally in the minerals produced from under any of the tracts, or any minerals produced from a production unit wherein any portion of any one or more of the eight tracts is included in the said unit.

ISSUE OF EXTINGUISHMENT OF SERVITUDE BY CONFUSION
Article 783 of the Louisiana Civil Code enumerates the methods by which a servitude may be extinguished. We quote the pertinent parts thereof:
"Art. 783. Servitudes are extinguished:
(3) By confusion.
. . ."
Articles 805 and 2217 of the Louisiana Civil Code, referring to extinguishment by confusion, read as follows:
Art. 805. Every servitude is extinguished, when the estate to which it is due, and the estate owing it, are united in the same hands.
But it is necessary that the whole of the two estates should belong to the same owner; for if the owner of one estate only acquires the other [in] part or in common with another person, confusion does not take effect.
Art. 2217. When the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation.
Defendants contend that by the act of donation of the surface rights of the 160-acre tract to the Mire children, the mineral servitude donated to them by their father, Erise Mire, in 1957, was extinguished by confusion within the meaning of LSA-C.C. Art. 805 for the reason that the servitude and the land owing it were "united in the same hands".
On the other hand, plaintiffs contend that confusion did not occur because of the second paragraph of Article 805 in that the "whole of the two estates" did not "belong to the same owner".
*466 In Clark v. Tensas Delta Land Company, 172 La. 913, 136 So. 1 (1931), our Supreme Court laid down the rule that an acquisition of mineral rights creates a servitude affording to the grantee the right to go upon the land of the grantor and explore for oil, gas, and other minerals, and to reduce them to possession. The Court observed that under the provisions of LSA-C.C. Art. 655, one of the characteristics of a servitude is that it does not oblige the owner of the estate that is subject to the servitude to do anything, but obliges him merely to permit to be done on his estate what is necessary for the owner of the servitude to have the benefit of it. The Court further noted that according to Article 656 of the Louisiana Civil Code, it is not possible for a person to have only a part of a servitude on another's land, although, according to Article 657, the benefits or advantages resulting from a servitude may be divided. No question then but that either the reservation or conveyance of mineral rights created a servitude upon the land involved. In Clark v. Tensas, supra, the Court clearly held that ten-year prescription for non-user was applicable under LSA-C.C. Art. 789 and 3544.
In Starr Davis Oil Co. v. Webber, 218 La. 231, 48 So.2d 906 (1950), the Louisiana Supreme Court was called upon to announce the legal effect of a mineral reservation in favor of a vendor. At Page 907, the Court stated:
". . . The sale or reservation of a part or all of the minerals is merely a grant of a right to go on the land for the exploration or exploitation of such minerals. This right has been defined on numerous occasions to be a real right in the nature of a servitude and the laws pertaining to servitudes control insofar as they are susceptible of application." Citations omitted.
In the case of GMB Gas Corp. v. Cox, 340 So.2d 638 (La.App. 2 Cir. 1976), the court had occasion to consider an agreement, between the parties to an act of partition, similar to the agreement with reference to mineral rights contained in the act of partition of 1965 which is at issue in this case. The language in the partition agreement in Cox was as follows:
"It is understood and agreed, however, that no partition is made of the mineral interest and the parties shall continue to remain as owners in indivision with respect to the oil, gas and other minerals in, on and under the property herein partitioned."
The Second Circuit ruled that a single mineral servitude was created upon the entire 400-acre tract partitioned, and in so holding, stated:
"The language of the partition agreement adopted by Cox and Sanders leaves no doubt that they intended to own the minerals under the entire 400 acre tract in indivision and to create a single mineral servitude for this purpose."
From the language of Clark v. Tensas, supra, and Cox, it is clear then that by the act of donation of minerals in 1957, a single mineral servitude of an eight-ninths (8/9ths) interest in the mineral rights underlying the tract involved was bestowed upon the Mire children. Erise Mire himself owned no part of that servitude. He had conveyed an eight-ninths (8/9ths) mineral interest servitude to his children, in indivision. The children owned 100% of the eight-ninths (8/9 ths) mineral servitude in the property involved. A single mineral servitude existed in their favor. Erise Mire owned no part of any mineral servitude on his own property, and he never did so own a mineral servitude on his own property. Because, by the act of donation of June 4, 1965, Erise Mire divested himself of the land on which he had granted a mineral servitude to his children, then, and only then, did he acquire a mineral servitude by reservation of a one-ninth (1/9th) mineral interest in the property of which he had divested himself by the act of donation.
We are of the opinion, and so hold, that as a result of the act of donation of 1965, the single servitude of 100% of eight-ninths (8/9ths) of the minerals which the children owned became extinguished by confusion when they acquired the surface rights. At that time, Erise Mire created *467 unto himself a mineral servitude of one-ninth (1/9th), something which he did not own before inasmuch as he could not own the surface rights and own a mineral servitude in his own favor at the same time. Therefore, in our opinion, the mineral reservation in favor of Erise Mire, and extinguishment of the mineral servitude in favor of his children when they acquired surface rights, occurred simultaneously, and hence the second paragraph of Article 805 did not prevent their mineral servitude from being extinguished by confusion, as a matter of law. LSA-C.C. Arts. 619, 783, 805, 2217; Sample v. Whitaker, 171 La. 949, 132 So. 511 (1930); Dufilho v. Borden, 152 La. 88, 92 So. 744 (1922). The stipulation as to the mineral rights in the act of partition of June 4, 1965, indicates to us that children of Erise Mire wished to re-establish the same rights which they had acquired from their father in the 1957 donation. Accordingly, a single servitude on the entire tract, which servitude was shared by each of the partitioners in an equal undivided one-ninth (1/9th) interest each, was created by the act of partition, and as of that date, a new ten-year prescriptive period for non-user commenced to run.
In accordance with the foregoing, we find, and accordingly hold, that on June 4, 1965, a new mineral servitude was created, effective as of that date, by the eight children of Erise Mire. The children were therefore entitled to share equally in production from minerals produced from the tract or tracts of either of them, or from production attributable to all or parts of the property partitioned which may be included in a production unit, even though the unit well (as in this case) may be off of the partitioned property. We therefore conclude that the payment of Chevron and/or Exxon of royalty benefits to the children on an equal basis was proper and in accordance with law. Accordingly, the trial court erred in decreeing otherwise; and awarding damages to the plaintiffs, cancelling the lease involved, and holding that prescription had run in 1967.
We therefore reverse the judgment of the trial court in toto and dismiss plaintiffs' suit with prejudice.
All costs of these proceedings, both in the trial court and in this Court, are assessed against plaintiffs-appellees.
REVERSED AND RENDERED.
NOTES
[1] Two of the plaintiffs represent a pre-deceased parent. Nellie Jane Mire Holloway is the surviving daughter of Cleveland Mire; Gloria Boudreaux Hanks is the surviving daughter of Mable Mire Hanks.