441 So.2d 776 (1983)
ALLIED CHEMICAL CORPORATION, Plaintiff-Appellee,
v.
Maude S. DYE, et al., Defendants-Appellants.
Nos. 15744-CA, 15745-CA and 15746-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
Rehearing Denied November 10, 1983.
Writ Denied January 16, 1984.
*777 Shotwell, Brown & Sperry by Edel F. Blanks, Jr., Monroe, for Allied Chemical Corp.
Blanchard, Walker, O'Quin & Roberts by J. Jay Caraway, Shreveport, for Maude S. Dye.
Plauche, Hartley, Lapeyre & Ottinger by S.W. Plauche, III, Lafayette, for Frank D. Rippy.
Shuey & Smith by John M. Shuey, Jr., Shreveport, for O.B. Mobley, Jr.
Napper, Waltman, Madden & Rogers by R.H. Madden, III, Ruston, for Peter Repetto, Helen H. Repetto, Truman A. Potts, Ellen R.C. Potts, Richard H. Springer and Myrtis Cook Springer.
M. Thomas Arceneaux, Shreveport, for Despot-Hawkins, Rentals.
Snellings, Breard, Sartor, Inabnett & Trascher by D.R. Sartor, Jr., Monroe, for Harold L. Woods, Jr., William E. Dent, Jr., William E. Dent, III, Ralph N. Saber, John O.Clay, Fred Pee and James H. Walters.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
JASPER E. JONES, Judge.
This is a concurcus proceeding initiated by the owner of leases covering three tracts of lands which are in producing units to determine who is entitled to receive the lessor's part of the proceeds from the minerals. The appellants, who are designated by the trial court as the "Group `B' Defendants," contend that mineral reservations contained in 1971 sales to their ancestors in title were invalid. They contend the reservations were invalid because the vendor in these deeds, who had received the property in a 1967 partition, had in the partition agreement participated in the creation of servitudes covering all the minerals and for that reason he had no minerals to reserve in the 1971 deeds. The trial court found the 1971 mineral reservations valid and we AFFIRM.
The trial judge in his reasons for judgment set forth in a clear and concise manner the complicated facts which created the litigation and we quote the facts, which are not in dispute, from the trial judge's reasons:

"OPINION
These three cases, consolidated for the purposes of trial and judgment because they originate from the same transaction and involve similar factual situations and common legal issues, are concursus proceedings brought by the plaintiff, ALLIED CHEMICAL CORPORATION, which is the stakeholder, against two groups of defendants in each case, designated as the "Group `A' Defendants" and the "Group `B' Defendants." The "Group `A' Defendants" in each of the cases are MAUDE S. DYE, FRANK D. RIPPY, and O.B. MOBLEY, JR.
*778 In Civil Docket No. 30,501, the "Group `B' Defendants" are HAROLD L. WOODS, JR., WILLIAM E. DENT, III, WILLIAM E. DENT, JR., RALPH N. SABER, JOHN O. CLAY, and FRED PEE.
In Civil Docket No. 31,112, the "Group `B' Defendants" are HAROLD L. WOODS, JR., WILLIAM E. DENT, III, WILLIAM E. DENT, JR., RALPH N. SABER, JOHN O. CLAY, FRED PEE, and JAMES HASTINGS WALTERS.
In Civil Docket No. 31,113, the "Group `B' Defendants" are PETER REPETTO, HELEN HOMAN REPETTO, TRUMAN A. POTTS, ELLEN RUTH COLLINS POTTS, RICHARD H. SPRINGER, MYRTIS COOK SPRINGER, and DESPOT-HAWKINS, RENTALS, a partnership composed of GREGORY A. DESPOT, CAMILLE C. DESPOT, GEORGE J. DESPOT, and GERALD W. HAWKINS.
The particular tracts of property and mineral interests thereto appertaining, which are the subjects of these suits, are as follows:
In Civil Docket No. 30,501
Southwest Quarter of Northwest Quarter, Section 32, Township 19 North, Range 4 West, Lincoln Parish, Louisiana;
In Civil Docket No. 31,112
South half of South half of Northeast Quarter, Section 31, Township 19 North, Range 4 West, Lincoln Parish, Louisiana;
In Civil Docket No. 31,113
Northwest Quarter of Northeast Quarter, Section 31, Township 19 North, Range 4 West, Lincoln Parish, Louisiana.
The plaintiff, which is the present holder of oil, gas and mineral leases upon each of the tracts, granted by both of the respective "Group `A' Defendants" and the "Group `B' Defendants," of each tract, has deposited into the Registry of the Court the portion of the proceeds claimed by the respective groups of defendants from the production of wells on units within which the tracts are located, as follows:
In Suit No. 30,501
The Gertrude D. Crawford No. 1 Well to be drilled in search of oil and gas in Section 32, Township 19 North, Range 4 West, Lincoln Parish, Louisiana, which was completed as a producer from the Gray Sands Reservoir A in the Terryville Field, with production commencing on October 23, 1979. By Order No. 370-E dated effective May 23, 1979, the Office of Conservation of the State of Louisiana created units for the Gray Sands, Reservoir A in the Terryville Field, Lincoln Parish, Louisiana, one of which said units constitutes all of Section 32, Township 19 North, Range 4 West, identified as the Gray RA SU B Unit, including the property involved in this suit;
In Suit No. 31,112
The Willamette Corp. No. 31-1 Well, to be drilled in search of oil and gas in Section 31, Township 19 North, Range 4 West, completed as a producer from the Gray Sands Reservoir A in the Terryville Field, production commencing on February 12, 1980. By Order No. 370-E dated effective May 23, 1979, the Office of Conservation of the State of Louisiana created units for the Gray Sands, Reservoir A in the Terryville Field, Lincoln Parish, Louisiana, one of which units constitutes all of Section 31, Township 19 North, Range 4 West, identified as the Gray RA SU M Unit, which unit includes all of the property described in this suit.
In Suit No. 31,113
The Willamette Corp. No. 31-1 Well to be drilled in search of oil and gas in Section 31, Township 19, North, Range 4 West, completed as a producer from the Gray Sands Reservoir A in the Terryville Field, production commencing on February 12, 1980. By Order No. 370-E dated effective May 23, 1979, the Office of Conservation of the State of Louisiana, created units for the Gray Sands, Reservoir A in the Terryville Field, Lincoln Parish, Louisiana, one of which units constitutes all of Section 31, Township 19 North, Range 4 West, *779 identified as the Gray RA SU M Unit, which unit includes all of the property described in this suit.
Prior to 1967, George H. Dye and other members of his family owned in indivision various tracts of land in Lincoln Parish, Louisiana, including the properties above described and involved in these suits. Their co-ownership resulted from inheritance from the parents of George H. Dye, and in Mr. Dye's instance, his purchase of undivided interest from a number of his co-heirs. By 1967, George H. Dye had acquired by inheritance and purchase an undivided 207/320ths interest in the entire property owned by the Dye family, which is described as follows:[1]
. . . . . .
NW ¼ of NE ¼, Section 31, ..., Section 30, Township 19 North, Range 4 West, ALSO:
SW ¼ of NW ¼, Section 32, S ½ of S ½ of NE ¼, Section 31, Township 19 North, Range 4 West, ...
All being situated in Lincoln Parish, Louisiana.
In 1967, the co-owners executed an Act of Partition of the above described property, which was executed by the various parties on August 12, and 18,1967, and on September 9, 1967. An error in the description of the lands being received by George H. Dye was subsequently corrected by an Instrument recorded December 23, 1970. The original Act of Partition was recorded on September 13, 1967, in COB 124 p. 462, Document No. C-59612, records of Lincoln Parish, Louisiana, and the Correction of the Act of Partition was recorded December 23, 1970, in COB 146 p. 197, under Document No. C-72680, records of Lincoln Parish, Louisiana.
The original Act of Partition contained the following provisions:
`It is specifically agreed and understood that this partition shall not cover or affect feet the minerals lying in, on, under, or that may be produced from, the property herein partitioned.' (Emphasis added.)
The particular portion of property acquired by George H. Dye by virtue of the Act of Partition, as subsequently corrected, is described as follows:[2]
"... NW ¼ of NE ¼, Section 31 and S ½ of S. ½ of NE ¼, Section 31, ... SW ¼ of NW ¼, Section 32, Township 19 North, Range 4 West; ..."
By deed dated April 2, 1971, recorded in COB 149, p. 68, records of Lincoln Parish, Louisiana, George H. Dye conveyed to Frank Trussell the property involved in Suit 30,501, along with other land, reserving all of the oil, gas and other minerals owned by him on, in and under and that might be produced therefrom. By deed April 2,1971, recorded in COB 149, p. 68, records of Lincoln Parish, Louisiana, George H. Dye conveyed to Frank Trussell the property involved in suit No. 31,112, along with other lands, reserving all of the oil, gas and other minerals owned by him on, in and under and that might be produced therefrom. By deed dated April 2, 1971, recorded in COB 149, p. 67, records of Lincoln Parish, Louisiana, George H. Dye conveyed to Frank Trussell the property involved in Suit No. 31,113, along with other lands, reserving all of the oil, gas and other minerals owned by him on, in, and under and that might be produced therefrom. Maude S. Dye is the widow and sole heir and legatee of George H. Dye, deceased, and has succeeded to any interest in the minerals in and under the property that George H. Dye may have owned by virtue of these last-mentioned reservations. Mrs. Maude S. Dye has been interdicted and her curator, Willard Donald Wallace, appears in these proceedings on her behalf.
By deed dated May 13, 1971, recorded in COB 149, p. 850, and by deed dated August 7, 1973, recorded in COB 168, p. 410, all of *780 the records of Lincoln Parish, Louisiana, Fred Pee purchased the property involved in Suit No. 30,501, and is the present owner of the property at the time of filing of that suit.
By deed dated May 13, 1971, recorded in COB 149, p. 850, and by deed dated August 7, 1973, recorded in COB 168, p. 410, all of the records of Lincoln Parish, Louisiana, Fred Pee purchased all that part of the South half of the South half of the Northeast Quarter, Section 31, Township 19 North, Range 4 West, lying East of the Center line of Lincoln Parish Road No. 233, together with other lands, and he is the present record owner of such property involved in Suit No. 31,112, as of the time the suit was filed.
According to the public records of Lincoln Parish, Louisiana, the property involved in Suit No. 31,113 is presently vested in the following persons:
 "W/2 of W/2 of
 NW/4 of NE/4 Section
 31, Township 19 North,
 Range 4 West -In Peter Reppeto and
 Helen Homan Reppeto
 (husband and wife)
 "E/2 of W/2 of NW/4
 of NE/4, Section 31,
 Township 19 North,
 Range 4 West -In Truman A. Potts
 and Ellen Ruth Collins
 Potts (husband and
 wife)
 "E/2 of NW/4 of
 NE/4, Section 31,
 Township 19 North,
 Range 4 West -In Richard H. Springer
 and Myrtis Cook
 Springer (husband and
 wife)"
(End of quote from trial court reasons)
The group `B' defendants, who are the appellants, are the respective landowners of the three tracts involved in the consolidated cases and those parties who acquired mineral or royalty interest from certain of these owners in the parcels owned by them. The group `A' defendants are Mrs. Maude S. Dye, and her curator, and parties who purchased royalty interest from Mrs. Dye prior to her interdiction.
Each group of defendants filed motions for summary judgment in each case and the trial court granted summary judgments in each case in favor of the group `A' defendants.
There were eight parties to the partition wherein George H. Dye received the property involved in this litigation. Prior to the partition George H. Dye owned 207/320 of the property and his seven co-owners owned 113/320 of the property. There were 12 noncontiguous tracts involved in the partition. Three of the partitioners received tracts in full ownership that were part of one continuous parcel before the partition and two of the partitioners received parcels in full ownership from another tract that was one continuous parcel before the partition. With these exceptions all of the partitioners received in full ownership noncontiguous tracts that were not part of a continuous whole tract before the partition. The tract involved in Suit # 15,745-CA was part of a tract received by George H. Dye that was noncontiguous to a tract received by him which included the two parcels involved in Suit # 15,746-CA and Suit # 15,744-CA. However, for ease of discussion we shall treat the three tracts included in the three suits as though they were part of one contiguous tract received by George H. Dye in order to eliminate the necessity of discussing two separate servitudes. The legal issues involved are the same except they would be applicable to two servitudes, one on each of the two noncontiguous tracts of which the property involved in this litigation was formerly a part.
The primary issue in this case is did the partition agreement create a single mineral servitude covering all the minerals on the property involved in this litigation owned in indivision by George H. Dye and his former co-owners. If this did not happen the partition created only a 113/320 mineral servitude owned by George H. Dye's former co-owners over the property received in full ownership by George H. Dye. Under the latter circumstance the remaining 207/320 mineral interest would not have been in the form of a mineral servitude but would have been a *781 part and portion of George H. Dye's full ownership of the property.
The foundation mineral cases held that you could create no separate mineral estate under our system of property law. A sale or reservation of minerals was found to create a real right in the nature of a servitude and was controlled by the rules in the civil code on servitudes insofar as the servitude principles were applicable. Frost Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922); Wemple v. Nabors Oil & Gas Co., 154 La. 483, 97 So. 666 (1923); Lee v. Giauque, 154.La. 491, 97 So. 669 (1923); Long-Bell Petroleum Co. v. Tritieo, 216 La. 426, 43 So.2d 782 (1949); Starr Davis Oil Co. v. Webber, 218 La. 231, 48 So.2d 906 (1950).
An owner of land encumbered by a mineral servitude affecting all of the minerals may not create another mineral servitude. He cannot contract with respect to the expectancy of a future reversion of the minerals. McMurrey v. Gray, 216 La. 904, 45 So.2d 73 (1949); Hicks v. Clark, 225 La. 133, 72 So.2d 322 (1954); La.R.S. 31:76.
A single mineral servitude may not be created on two or more noncontiguous tracts of land. Lee v. Giauque, supra, La.R.S. 31:73. An act creating mineral servitudes on noncontiguous tracts creates as many servitudes as there are tracts. Lee v. Giauque, supra, La.R.S. 31:64.
When the owner in entirety of the servitude becomes the full owner of the land which is subject to the servitude, confusion extinguishes the servitude. Former C.C. 783, 805; La.R.S. 31:27; Arent v. Hunter, 171 La. 1059, 133 So. 157 (1931); Mire v. Chevron Oil Co., 353 So.2d 462 (La. App. 3rd Cir.1977). The general rule is that servitudes owned in indivision by co-owners are indivisible. Lowry v. MRT Exploration Co., 382 So.2d 1034 (La.App. 2d Cir.1980), and authorities therein cited. La.R.S. 31:62.
There was no action taken by any of the parties to the partition that interrupted prescription during the 10 years following the partition and for that reason the servitude that was created in the partition was terminated by prescription in 1977. If a single mineral servitude covering all the minerals was created on the three tracts involved here in the 1967 partition this servitude would have been in existence in 1971 when George H. Dye sold the property and his mineral reservations in the 1971 sales could not create new servitudes.
The 1967 servitude prescribed in 1977 and the owners of property at the time prescription occurred acquired perfect ownership of the land free of any mineral servitude if the partition transaction created a single mineral servitude covering all the minerals. Under these circumstances the group `B' defendants, who are the owners of the land, or those claiming through them, shall prevail.
If the partition created only a 113/320 mineral servitude in favor of George H. Dye's former co-owners then the 207/320 remaining minerals were not part of that servitude. These minerals were included within the perfect ownership of the property received by George H. Dye in the partition. In this event George H. Dye created valid separate 207/320 mineral servitudes when he reserved the minerals in the 1971 sales of the property received by him in the partition. If this be true when the mineral servitude created by the partition prescribed in 1977 the former Dye property remained subject to the servitudes created by Dye in 1971 which have not prescribed because of production within ten years of their creation. In this event the group `A' defendants would prevail.
In order to resolve the issue presented by this case we shall first determine if a single servitude affecting all the minerals on the property here involved and received by Dye could be created under our law. If we conclude this type servitude can be legally created we must interpret the partition agreement and determine if the parties agreed to create on each noncontiguous tract a single mineral servitude covering all the minerals.
*782 The trial court held that a single mineral servitude partially created by and owned in part by the owner of the land subject to the servitude was a creation of a separate mineral estate which is prohibited subject to the exceptions contained in R.S. 31:66[3] and R.S. 31:67.[4] He then found the exceptions not applicable to the facts.
In his very well reasoned opinion the trial judge stated that the mineral code only became effective in 1975 whereas the most important operative facts involved in this litigation occurred before the effective date of the code. We note that LA.R.S. 31:214 of the Mineral Code provides that the mineral code shall apply to mineral rights existing on the effective date of the code but that it shall not be applied to divest already vested rights. In our view there is no provision of the Mineral Code that will have the effect in this case of divesting rights vested at the time of its enactment.
The trial court correctly recognized that the provisions of LA.R.S. 31:67, which provides that co-owners of land constituting a continuous whole may partition it and reserve a single servitude in favor of one or more of them, states a rule that had been recognized in the pre-mineral code case of Whitehall Oil Company v. Heard, 197 So.2d 672 (La.App. 3rd Cir.1967). The facts of Whitehall and the rule of 31:67 are distinguishable from this case for the reason that the parties to the Dye partition did not receive parcels of a continuous whole tract but rather each received in full ownership property that was formerly part of noncontiguous tracts owned by them in indivision. As we have earlier pointed out the three tracts involved in this litigation were formerly contained in two noncontiguous tracts owned by partitioners in indivision.
The appellants acknowledge that the Whitehall rule as codified in 31:67 does not authorize the creation of a single servitude affecting all of the noncontiguous tracts involved in this partition. This is specifically prohibited. Lee v. Giauque, supra. The appellants contend that the partition created separate single servitudes covering all the minerals on each noncontiguous tract involved in the partition which is not contrary to the rule of Lee v. Giauque.
Whitehall relied upon the cases of Gulf Oil Corporation v. Clement, 239 La. 144,118 So.2d 361 (1960), and Lenard v. Shell Oil Co., 211 La. 265, 29 So.2d 844 (1947), for the rule that co-owners could partition a single tract and subject the parcels received by each to a single mineral servitude over the whole tract. The principle contained in these cases is that where the tracts are contiguous there is no limitation on the creation of a single servitude.
While Whitehall is factually distinguishable from the case here presented there is no reason why the rule contained in the cases relied upon by Whitehall would not be applicable to each noncontiguous tract of the 1967 partition and permit the creation of a single servitude upon each of them.
Former C.C. Art. 709[5] provides that owners of property shall have complete freedom in the establishment of predial servitudes provided that they are not contrary to public policy. The comments under present Article C.C. 697,[6] which replaces former *783 C.C. Art. 709, indicate there is no change in the law and that owners of property shall have freedom to establish servitudes they see fit as long as the servitudes are not contra to public policy. LA.R.S. 31:72[7] of the mineral code provides that parties to an act creating a mineral servitude may alter the applicable legal rules subject to the limitations provided in Articles 73 through 79. None of the limitations contained in Articles 73 through 79 create any limitation to the co-owners of several noncontiguous tracts partitioning them and creating a single mineral reservation on each tract. There is no limitation precluding the partitioned from owning each of the servitudes in indivision even though the partitioned tracts belong in full ownership to one of the partitioners.
The rules of servitude contained in the civil code are not inconsistent with co-owners of a continuous tract creating a single servitude owned in indivision by them and vesting full ownership of the tract in one of the co-owners. The rules of confusion contained in Former C.C. Articles 783 and 805 provide that when the owner of the servitude becomes the owner of the land confusion occurs, however, the second paragraph of C.C. 805 specifically recognizes that the quality of ownership of the two estates must be identical for confusion to occur. Applying the second paragraph of 805 to the situation where the part owner of the single servitude becomes full owner of the land subject to the servitude no confusion would occur. These provisions are applicable to mineral servitudes. Arent v. Hunter, supra; Mire v. Chevron Oil Co., supra. The rules of former C.C. Articles 783 and 805 are maintained in present C.C. Article 765. Roberson v. Reese, 376 So.2d 1287 (La.App. 2d Cir.1979).
The general rule is that servitudes owned by co-owners are indivisible. Hodges v. Norton, 200 La. 614, 8 So.2d 618 (1942), Lowry v. MRT Exploration Co., supra. See also LA.R.S. 31:62. In the event one of the co-owners acquired the land subject to the servitude under the provisions of C.C. 805(2) there would be no confusion.
The trial judge found that Article 805 had no application to a mineral servitude because it was applicable only to predial estates. We disagree. Harriet Daggett, the renowned authority in the field of Louisiana mineral rights, in her well-known book, "Daggett on Louisiana Mineral Rights (Revised Edition)", states in § 7 of her book, while discussing the case of Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746 (1947), "... the servitude was `likened unto' a dominant praedial estate but again it was not put irrevocably into any category but marked as a right of individual and peculiar characteristics to which rules of both praedial and personal servitude might be applicable.' In Section 10 she states, `The mineral servitude is neither praedial nor is it a usufruct. Indeed, it has been clear from the beginning that the mineral servitude fits perfectly into no civil code category but is only capable of being `likened unto' the established classes." In the Mire case, supra, the court considered Article 805(2) applicable to mineral servitudes but found it there inapplicable because all of the owners of the servitude acquired the land which was subject to the servitude and for that reason confusion occurred.
The only two contentions made as a basis for the legal impossibility of creating single servitudes owned by all the partitioners over each of the noncontiguous tracts in the Dye partition is that such result would create the prohibited separate estate in minerals and would violate the general rule of confusion. Both of these contentions are directed at the partial ownership of the servitude being vested in the full owner of the tract of land subject to the servitude. These contentions are without merit. This *784 result is contemplated by the second paragraph of former C.C. 805, was approved by Whitehall, was incorporated in Articles 66 and 67 of the Mineral Code and has been applied in GMB Gas Corp. v. Cox, 340 So.2d 638 (La.App. 2d Cir.1976); Mire v. Chevron Oil Co., supra, and Wall v. Leger, 402 So.2d 704 (La.App. 1st Cir.1981). There is no doubt that rules of prescription are applicable to this type of servitude which would be totally inconsistent with the concept of a separate estate in minerals. See Cox v. Sanders, 421 So.2d 869 (La.1982). In the case of Wemple v. Nabors Oil & Gas Co., supra, the court recognized that the major difference between the prohibited separate estate in minerals and a mineral servitude is that the rules of servitude prescription would be inapplicable to the former.
The Dye partitioners could create single servitudes upon each of the many noncontiguous tracts and be within the rule of Lee v. Giauque, supra. In the last analysis the single servitudes contemplated by appellant's argument are in results exactly like those discussed in Whitehall, and recognized in the Mineral Code and approved by the jurisprudence subsequent to the Mineral Code. The creation of servitudes owned in part by the full owner of the land subject to the servitude is exactly the result contemplated by Mineral Code Articles 66 and 67.
Considering the freedom of contract permitted in connection with the creation of servitudes contemplated by former C.C. 709, which freedom of contract concept has been incorporated into the Mineral Code in Article 72, there is no sound reason why co-owners of noncontiguous property cannot partition it by giving full ownership of the noncontiguous tracts to the various participants subject to a single servitude owned in indivision by all of the participants including the party that received the tract in full ownership. There is no difference in the end results here created from the end results which occur when owners of a single tract partition it into separate tracts owned in their entirety by the respective parties to the partition subject to a single servitude owned in part by the full owners of each of the divided tracts which is specifically authorized by Art. 67 of the Mineral Code.
We have concluded that the parties to the 1967 partition could have legally created a single servitude of all the minerals over each of the two noncontiguous tracts included in this litigation. We now address the issue of whether the partition document provided for these single servitudes owned in indivision by the party who received the property in full ownership and the parties who divested themselves of ownership in these tracts.
The partition agreement contained the following provision:
"It is specifically agreed and understood that this partition shall not cover or affect the minerals lying in, on, under, or that may be produced from, the property herein partitioned."
Appellants contend that the parties to the partition could only have meant to continue as the owner of the minerals under all the land involved in the same manner as they owned the full fee title to the land.
The provision says that the partition shall not affect the minerals. Before the partition George Dye had perfect ownership of 207/320 of each tract received by him in the partition. There was no outstanding servitude affecting this ownership interest. An agreement which provides that this unsevered right to search for minerals and grant a servitude shall remain unaffected cannot be interpreted to mean that his mineral ownership has changed in form from an element of perfect ownership to an undivided interest in a servitude over the property received.
There was no necessity for any provision relating to minerals to be in the partition in order for the minerals under the tracts received by each of the participants in full ownership to remain unaffected and in the same form with relation to the undivided interest the full owner had in such tract before the partition. The reason why the provision was important and necessary was solely related to the interest in the minerals each owned in the tracts of land that were being vested in the other participants in full *785 ownership by the act of partition. The only reason for the provision, providing that the minerals shall not be affected by the partition, was in order for those divesting participants to each retain an interest in the right to search on tracts being vested in full ownership in one of their co-partitioners. The sole intent of the clause requiring that the minerals were to remain unaffected was to preclude the loss of the pro rata share of the minerals by those participants who were being divested of their pro rata ownership in the tracts received by their co-participants in full ownership. The intent of the parties was not that the provision was to have an effect on the pro rata share of the minerals of the participant who was receiving the tract in full ownership. There was no intent that his initial interest which he had in the minerals by virtue of his perfect ownership in the undivided property be changed by the full ownership of the tract he received in the partition and be placed into a single servitude along with the mineral rights being reserved by his former co-owners.
Appellants rely upon GMB Gas Corp. v. Cox, supra, and Wall v. Leger, supra, each of which held that provisions of partition agreements being there construed created a single servitude affecting all the minerals under the tracts received by the parties to the partition. The clause construed in Cox was:
"It is understood and agreed, however, that no partition is made of the mineral interest and the parties shall continue to remain as owners in indivision with respect to the oil, gas and other minerals in, on and under the property herein partitioned." 340 So.2d at page 639.
We note that the language in the Cox provision specifically stated, "The parties shall continue to remain as owners in indivision with respect to the oil, gas, etc." This language establishes an intent of the parties to have a single servitude over all the minerals.
The provision in the Wall agreement spelled out that minerals under each tract would be owned "... in the proportion set out by each name," which language carries the connotation that the minerals were to be owned in indivision by each party on each tract and that the parties intended a single servitude.
The clause upon which appellants rely contains no provision similar to those found in the contracts construed in Cox and Wall and we find those cases inapplicable.
While we discern no ambiguity in the clause relied upon by appellants, assuming there is some justification for appellant's contrary interpretation, then extrinsic evidence is admissible to assist in the determination of the intent of the parties. Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363 (1944). The attorney who prepared the partition and who represented all of the parties to it, and particularly George H. Dye, testified in a deposition filed in these proceedings that there was no intent to create a single servitude owned in indivision by all of the partitioners over each tract included in the partition. The totality of his testimony was to the effect that the intention of the parties was to receive their respective tracts in full ownership subject to a mineral servitude in favor of and for the pro rata part of those participants who were divesting themselves of their interest in the respective tracts.
We further note the rule of interpretation relied upon in Whitehall, supra, which provides that servitudes, which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected. If there can be said to be any doubt as to the extent of the servitude created by the clause in the 1967 partition and we believe there is none, this rule of interpretation mandates that the provision be interpreted as nothing more than a reservation of minerals by the divesting participants in each tract being received in full ownership by their co-partitioners.
The judgment in each of the consolidated cases is AFFIRMED and the costs of the *786 appeal are assessed equally against all of the defendants in this proceeding.
NOTES
[1] We omitted the descriptions of the numerous tracts owned in indivision by the Dye family from the facts set forth in the trial court's reasons with the exception of the tracts involved in these cases.
[2] We omitted the property received by George H. Dye that is not involved in this suit.
[3] LA.R.S. 31:66:

The owners of several contiguous tracts of land may establish a single mineral servitude in favor of one or more of them or of a third party.
[4] LA.R.S. 31:67:

Co-owners of land constituting a continuous whole may partition it and reserve a single mineral servitude in favor of one or more of them.
[5] Former C.C. Article 709:

Owners have a right to establish on their estates, or in favor of their estates, such servitudes as they deem proper; provided, nevertheless, that the services be not imposed on the person or in favor of the person, but only on an estate or in favor of an estate; and provided, moreover, that such services imply nothing contrary to public order.
The use and extent of servitudes thus established are regulated by the title by which they are granted, and if there be no titles, by the following rules.
[6] C.C. Article 697:

Predial servitudes may be established by an owner on his estate or acquired for its benefit.
The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the following rules.
[7] LA.R.S. 31:72:

Parties to an act creating a mineral servitude may alter the applicable legal rules subject to the limitations provided in Articles 73 through 79.