471 So.2d 877 (1985)
TEXACO, INCORPORATED, Initiator of the Concursus,
v.
NEWTON AND ROSA SMITH CHARITABLE TRUST, Defendant-Appellant,
Michael R. Smith and Cheryl L. Smith, Defendants-Appellees.
No. 17012-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*878 Blanchard, Walker, O'Quin & Roberts by Reginald E. Cassibry, Shreveport, for Texaco, Inc.
Egan & Cook by Reuben W. Egan, and Patricia L. Roberts, Shreveport, for Newton & Rosa Smith Charitable Trustappellant.
Peters, Ward, Bright & Hennessy by Frank Bright and J. Patrick Hennessy, Shreveport, for defendants-appellees Michael R. Smith and Cheryl L. Smith.
Lee & Bartage by Gordon O. Bartage, Shreveport, for defendant-appellee Curator Ad Hoc for Newton Smith.
Before MARVIN, JASPER E. JONES, SEXTON, JJ.
JASPER E. JONES, Judge.
The plaintiff, Texaco Incorporated, instituted this concursus proceeding to determine the ownership of a ½ mineral interest in a 500 acre tract of land in Caddo Parish. Funds accruing to the disputed interest were deposited in the registry of the court. The claimants are: (1) Michael and Cheryl Smith (appellees) who are the record owners of the 500 acres; and (2) the Newton and Rosa T. Smith Charitable Trust.[1] The Charitable Trust appeals a summary judgment decreeing appellees to be the owners of the disputed interest and awarding appellees the funds deposited in the registry of the court. We affirm.
It is undisputed that a mineral servitude covering the disputed interest was created in favor of the Charitable Trust by the will of Rosa T. Smith and that the servitude so created prescribed by ten years nonuse in December, 1975.[2] The major issues raised on appeal are whether a new servitude in favor of the Charitable Trust was created in a March 5, 1976 act of transfer of the ownership of the 500 acres from the owner to appellees' ancestors in title and if not, whether appellees are estopped from asserting *879 their claims to the disputed interest.
Newton and Rosa T. Smith, husband and wife, formerly owned the 500 acre tract as part of their extensive land holdings in Caddo Parish. No children were born of the marriage between Newton and Rosa but they took a special interest in Newton Alberta and Joseph Alberta who lived on their property. Newton Smith died testate on November 20, 1956 leaving all his property to his wife. Rosa died testate on February 21, 1958. Her will directed the establishment of two trusts relevant to this litigation, the Newton and Rosa T. Smith Charitable Trust and the Alberta Children Trust.
Rosa left a ½ mineral interest in all of her property to the Charitable Trust. It was also provided that the trust was to remain in existence for as long as the law allowed.
To the Alberta Children Trust Rosa left the 500 acre tract for the benefit of the Alberta brothers subject to the mineral servitude in favor of the Charitable Trust. She directed that this trust was to remain in existence until the 25th birthday of the younger brother, Joseph, at which time ownership of the property would be transferred to the brothers in indivision.
The cumulative effect of the creation of the two trusts was to grant the Charitable Trust a servitude over ½ the minerals in the 500 acre tract, the title to which was left to the Alberta Children Trust. After Rosa's death there was some drilling activities on the land covered by the servitude. All activities which would have served to interrupt prescription terminated on December 9, 1965 and prescription accrued on December 9, 1975.
Joseph Alberta had his 25th birthday on March 5, 1976 and on that date the trustees of the Alberta Children Trust transferred ownership of the 500 acres to the brothers. The act of transfer provides in part:
"The real property herein conveyed is subject to:

(1) An oil, gas and mineral lease executed by vendors in favor of Lee Kinnebrew, husband of Grace M. Kinnebrew, under date of October 29, 1974, for a primary term of five (5) years, and
(2) An agricultural lease executed by vendors in favor of W.L. McKinney, under date of December 12, 1974, for a primary term of two (2) years, and
(3) A reservation of one-half (½) of the oil, gas and other minerals under the real property conveyed in favor of the NEWTON AND ROSA T. SMITH CHARITABLE TRUST, a Louisiana non-profit corporation, domiciled in Shreveport, Caddo Parish, Louisiana." (emphasis added)
The Alberta brothers divested themselves of the ownership of the 500 acres through several conveyances to James R. Kavanaugh.[3] Each act of conveyance recognizes that the property sold was subject to the reservation of ½ the minerals in favor of the Charitable Trust. Appellees, who are unrelated to Newton and Rosa Smith, acquired ownership of the 500 acres in two transactions, in June, 1978 and February, 1981, from vendees of Kavanaugh.
On April 10, 1980 appellees at the request of Wilburn Lunn, a lawyer, who at the time was a trustee for the Charitable Trust and who represented appellees in the first transaction in which they purchased a portion of the 500 acres, executed an instrument which states that with respect to the portion of the tract purchased in June, 1978, they do hereby ratify and confirm:
"(1) the reservation of one-half (½) of the oil, gas and other minerals under said property in favor of the Newton and Rosa T. Smith Charitable Trust, a Louisiana non-profit corporation, domiciled in Caddo Parish, Louisiana."
On April 11, 1980 Newton Alberta executed a document which stated:
"BEFORE ME, the undersigned authority, personally came and appeared Newton Smith [Alberta], husband of Ruthie Marie Fuller Smith, and a resident of Harris County, Texas, who declared:

*880 That with respect to the property acquired by him from the Trustees under the trust created under the will of Rosa Anna Teamer Smith, under date March 5, 1976, as recorded in Conveyance Book 1534 page 58 of the records of Caddo Parish, Louisiana, he does hereby ratify and confirm
The reservation of one-half (½) of the oil, gas and other minerals under said property in favor of the Newton and Rosa T. Smith Charitable Trust, a Louisiana non-profit corporation, domiciled in Caddo Parish, Louisiana.
This correction and amendment is made to more definitely set forth the division of the mineral interest intended under the conveyance of said property, with appearer and his brother Joseph Leon Smith, acquiring the remaining one-half (½) interest in the minerals under said property."

NEW SERVITUDE
Appellant contends that the "subject to the reservation of minerals" clause in the March 5, 1976 act of transfer of the 500 acres from the Alberta Children Trust to the brothers created a new servitude in favor of the Charitable Trust.[4] In the alternative it contends that it should be allowed to put on parol evidence to show that the parties to the act of transfer intended to create a new servitude. The trial court rejected both contentions.
The reservation or sale of minerals creates a real right in property in the nature of a servitude. LSA-R.S. 31:18 and 21; Steele v. Denning, 445 So.2d 94 (La. App.2d Cir.1984), aff. 456 So.2d 992. The right to impose a servitude on land belongs exclusively to the owner of the land and a mineral servitude can be created only by a landowner who owns the minerals. LSA-R.S. 31:24; Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782 (1949); Bourg v. Hebert, 224 La. 535, 70 So.2d 116 (1954); Wall v. Leger, 402 So.2d 704 (La. App. 1st Cir.1981).
The intention of the proprietor to establish a servitude must clearly appear from the face of the instrument purporting to establish the servitude. Noel Estate v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468 (1937); McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960); LeSage v. Ellerbee Builders, Inc., 424 So.2d 282 (La.App. 1st Cir.1983). Any doubt as to the existence of a servitude must be resolved in favor of the servient estate. LSA-C.C. art. 730; McGuffy v. Weil, supra; Roemer v. Caplis, 369 So.2d 1186 (La.App.2d Cir.1979).
The phrase "subject to" has been interpreted by Louisiana courts as the recognition of rights previously in existence rather than as the creation of new rights. Patton v. Frost Lumber Industries, 176 La. 916, 147 So. 33 (1933); Hodges v. Long-Bell Petroleum Company, 240 La. 198, 121 So.2d 831 (1960); Roemer v. Caplis, supra; LeSage v. Ellerbee Builders, Inc., supra. In Hodges v. Long-Bell Petroleum Company, supra at 839, the Louisiana Supreme Court summarized the distinction between a sale of land with reservation of mineral rights and a sale of land subject to existing rights as follows:
"There is a difference between the sale of a tract of land with a reservation of the minerals and the sale of land subject to existing mineral rights in it. The former is accomplished with language of reservation and indicates that something new is being created. A vendee under such mineral reservation is led to believe that the servitude created by it will prescribe at the end of ten years unless there is mineral development within that time on the land sold. On the other hand, the latter form of conveyance, accomplished with language of exception, puts the vendee on notice that there is a pre-existing mineral servitude on the land which may extend beyond the limits *881 of the land purchased, and that prescription on any such servitude may have been interrupted, or may in the future be interrupted, by mineral development on land other than his own. Hence, language of reservation will suffice to declare one type of charge against the land, but language of exception is necessary to declare the other." (emphasis in the original)
In support of its position that the "subject to the reservation of minerals" language was sufficient to create a new servitude appellant relies on the case of Mallet v. Thibault, 212 La. 79, 31 So.2d 601 (1947) which seems to hold that a "subject to" clause in an agreement to sell the servient estate created a personal right of passage across that estate. Appellant's reliance on the Mallet decision is misplaced. Notwithstanding language to the contrary, a careful analysis of the facts in the case reveals that instead of creating a new right of passage, the "subject to" clause in the sales agreement merely recognized a right of passage previously in existence.[5] Also, we note the Hodges v. Long-Bell decision was rendered subsequent to Mallet and we decline to follow Mallet to the extent it may be contrary to Hodges v. Long-Bell.
We conclude that the "subject to the reservation of minerals" clause in the March 5, 1976 transfer of the 500 acres from the Alberta Children Trust to the brothers did not establish a new servitude in favor of the Charitable Trust. The clear and legally established meaning of the clause is that it is a recognition of whatever rights existed by virtue of the previously created servitude pursuant to the will of Rosa Smith. Affidavits in the record establish that at the time of the March 5, 1976 conveyance the vendors in that deed were uncertain as to whether the servitude created pursuant to the will had prescribed.
We also find no error in the trial court's determination that appellant is not entitled to introduce parol evidence to establish the parties' intent in adding the "subject to the reservation of minerals" clause to the transfer agreement. As a general rule where the words to a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. See current LSA-C.C. arts. 1848 and 2046;[6] former C.C. arts. 1945 and 2276;[7]McClelland *882 v. Security Indus. Ins. Co., 426 So.2d 665 (La.App. 1st Cir.1982); Quintana Petroleum Corp. v. Alpha. Inv. Corp., 435 So.2d 1092 (La.App. 1st Cir.1983); Roemer v. Caplis, supra. There is nothing in the record to suggest that the case falls within one of the recognized exceptions to the parol evidence rule. The "subject to the reservation of minerals" clause is not ambiguous, see Bostick v. Foret, 351 So.2d 238 (La.App. 4th Cir.1977); and there are no allegations of fraud, error, duress or simulation. See C.C. art. 1848; Mitchell v. Clark, 448 So.2d 681 (La.1984).
The appellant is not entitled to establish by evidence outside of the public records any right to the disputed mineral right. Roemer v. Caplis, supra. Ownership of immovable property (which includes mineral rights) in dispute must be determined from the public records. A conveyance of land carries with it all incidents of ownership, including mineral rights, except such rights as may be expressly reserved. Roemer v. Caplis, supra. The public records did not establish there was a mineral servitude which affected appellees' property created in favor of the Charitable Trust by the March 5, 1976 conveyance. The 500 acres was acquired by appellees' ancestors in title free of a mineral reservation affecting the disputed mineral interest and this mineral interest was included as an element of ownership in appellees' chain of title and was included with the property when it was purchased by appellees.

ESTOPPEL
Appellant contends that appellees are estopped from asserting their rights in the disputed interest by virtue of their execution of the April 10, 1980 act ratifying and confirming the reservation of minerals in favor of the Charitable Trust. The trial judge found that the necessary elements of estoppel are not present and rejected this contention.
There are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975); John Bailey Contr. v. St., Dept. of Tr. & Dev., 439 So.2d 1055 (La.1983).
Appellant does not contend the language in the 1980 affidavit of appellees was sufficient to actually create a servitude. It contends that the affidavit ratified the servitude created in the March 5, 1976 conveyance. We have earlier discussed at length why the March 5, 1976 deed created no mineral servitude to ratify and for this reason the appellant had no sound reason to rely upon the appellees' 1980 affidavit as creating a mineral interest in favor of the Charitable Trust. The appellant did not change its position in reliance on the affidavit because its asserted claim of ownership of the disputed mineral interest continued to rest on the March 5, 1976 act which preceded the appellees' affidavit by several years. The Charitable Trust has no interest in the disputed minerals but this is due to no act of the appellees, but rather the reason why the Charitable Trust has no interest in the disputed minerals is that its initial servitude prescribed and there has been no subsequent conveyance to it of the mineral servitude by an owner of the land who owned the minerals. The trial judge correctly determined that the elements of estoppel are not present.
There is no genuine issue as to a material fact and appellees were entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Judgment AFFIRMED at appellant's costs.
NOTES
[1] Other claimants named in the petition who did not assert their claims were Joseph Leon Smith (formerly Joseph Alberta) and Newton Smith (formerly Newton Alberta). These claimants changed their names at some point during the course of the operative facts. In order to avoid confusion we will refer to them by their former names throughout the opinion.
[2] The litigants conceded at oral argument that the servitude had prescribed. At p. 15 of appellant's brief they stated, "Since the servitude had prescribed, the mineral reservation made in favor of the Charitable Trust was a stipulation pour autrui." (emphasis added)
[3] Each brother retained a 1/8 mineral interest in the property through the various transfers.
[4] Appellant argues that the clause was in the nature of a stipulation pour autrui which was accepted by the Charitable Trust.
[5] Several years before the agreement to sell the servient estate was executed, the vendor entered a written agreement to grant the right of passage and was personally bound by this agreement. Although the supreme court stated, for reasons irrelevant to the instant case, that the vendor was not legally obligated to protect this right when he sold the servient estate, the fact remains that he did place the "subject to" provision in the agreement to sell to honor and protect his earlier agreement to grant a servitude of passage.
[6] Current articles 1848 and 2046 provide:

Art. 1848. Testimonial or other evidence not admitted to disprove a writing
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
Art. 2046. No further interpretation when intent is clear
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.
[7] Prior to the 1984 amendment of Titles III and IV of Book III, effective January 1, 1985, articles 1945 and 2276 provided:

Art. 1945. Interpretation according to intent of the parties
Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
FirstThat no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
SecondThat courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
ThirdThat the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequence;
FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract. (emphasis added)
Art. 2276. Parol evidence relative to written instruments
Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.