544 So.2d 67 (1989)
TEXAS GAS EXPLORATION CORPORATION
v.
BRIAN INVESTMENTS, LTD., et al.[1]
No. 88 CA 0613.
Court of Appeal of Louisiana, First Circuit.
May 16, 1989.
Rehearing Denied June 23, 1989.
*68 Kim Gregory Mayhall, Sr. Charles St. Diezier, Baton Rouge, for plaintiff Texas Gas Exploration Corp.
Morton Katz, New Orleans, for Numa Martinez, et al.
*69 James Derbes, New Orleans, for Ida Muller, et al.
George Blue, Sr., Metairie, for Brian Investments.
George Blue, Sr., Metairie, Fernando Cuquet, Jr., New Orleans, for Brian Investments.
Joseph Henican, III, New Orleans, for C. Ellis Henican, D.S. Realty, Elizabeth Henican.
Darryl Landwehr, New Orleans, for Conrad Franz.
J. Gibson Tucker, Jr., New Orleans, for Ruthrthal Inc., Sam J. Recile, Trustee for the S & S Trust No. 1.
Steven W. Usdin, New Orleans, for James G. Anthony.
John Keller, Lafayette, for Gerald Keller, Joan Keller Emile Toups, Mary Toups and James McCann.
William Moss, Houston, Tex., J. David Forsyth, New Orleans, for Ogeechee River Investments.
George Scariano, Metairie, for Priscilla Donaldson and Donald Mueller.
Moise Steeg, Jr., New Orleans, for Dr. J. Ralph Meier, Dr. Francis Patton, Edwin Hartzman, Kermit Roux, Jr., W. David D. Laureal.
Before WATKINS, CRAIN and ALFORD, JJ.
CRAIN, Judge.
This is a concursus proceeding instituted by Texas Gas Exploration Corporation, the mineral lessee, in which Texas Gas seeks to have the court determine the rights of the named defendants to shut-in gas royalty payments.
By credit sale dated October 1, 1976, and recorded on October 5, 1976, Champion Realty Corporation (Champion) sold to Brian Investments, LTD. (Brian) approximately 32,000 acres of land located in the parishes of Livingston, St. James, and St. John the Baptist. Brian paid the sum of $500,000 cash and a promissory note for the balance of $3,450,000. Champion reserved 50% of the mineral rights in the act of sale. Champion's share of the mineral rights are not at issue in this proceeding. A quitclaim deed between the parties was executed and recorded on the same dates respectively as the credit sale.
A document entitled "Assignment of Production Payment" was executed by Brian on October 1, 1976, and recorded on October 15, 1976. In this document Brian created a $50,000,000 production payment to be satisfied out of 10% of 100% of all minerals produced from the property. The document further provides:
The said Fifty Million and No/100 ($50,000,000.00) Dollar production payment shall be payable to the following parties in the following amounts, to-wit:
(1) Robert J. Landry, in the sum of Two Million Five Hundred Thousand and No/100 ($2,500,000.00) Dollars;
(2) Louis A. Pilie, in the sum of Two Million Five Hundred Thousand and No/100 ($2,500,000.00) Dollars;
(3) Dr. Daniel E. Zelenka, in the sum of Eleven Million Two Hundred Fifty Thousand and No/100 ($11,250,000.00) Dollars;
(4) Jack J. Reynolds, in the sum of Eleven Million Two Hundred Fifty Thousand and No/100 ($11,250,000.00) Dollars;
(5) Murray, Murray, Ellis & Braden, Attorneys, in the sum of Five Million and No/100 ($5,000,000.00) Dollars.
(Hereinafter the five assignees are referred to as the original assignees.) The balance of Seventeen Million Five Hundred Thousand and No/100 ($17,500,000.00) Dollars is reserved by Brian Investments, Ltd., Grantor, for its own benefit, subject to whatever, if any, transfers and assignments it may hereafter make from time to time.
On October 6, 1976, Brian conveyed the property to Ascantia, Inc. (Ascantia). Brian was a 50% shareholder of Ascantia and the remaining 50% was comprised of the original assignees of the production payment. Consideration for the cash sale was the sum of $100, Ascantia's assumption of the $3,450,000 promissory note and two *70 collateral mortgages previously executed by Brian. The document further provided:
Anything contained herein to the contrary notwithstanding, this transfer is subject to that certain Assignment of Production Payment by Brian Investments, Ltd., made and executed October 1st, 1976, in favor of Robert J. Landry, Louis A. Pilie, Dr. Daniel E. Zelenka, Jack J. Reynolds, and Murray, Murray, Ellis & Braden, Attorneys, and Brian Investments, Ltd., including its transferees and assigns.
The document was recorded on October 18, 1976. Subsequent to this transaction, Brian assigned a total of $4,300,000 of the $17,500,000 production payment to various individuals or entities, some of whom in turn assigned portions of their shares to other persons.
A document entitled "Cancellation of Production Payment" signed by all of the original assignees, Dr. Daniel E. Zelenka, Jack J. Reynolds, Julian R. Murray, Jr., Stephen B. Murray, Michael H. Ellis, Henry E. Braden, IV, Louis A. Pilie, Robert J. Landry and Brian was executed and recorded on October 31, 1977. The document referred to an agreement previously entered into between Ascantia and G.R.P. Investments, N.V. (G.R.P.) regarding the payment by G.R.P. to Ascantia of the sum of $4,250,000 by which Ascantia was to satisfy certain financial obligations and G.R.P. received the right from Ascantia to cancel the $50,000,000 production payment originally created by Brian.[2] According to the document, G.R.P. had transferred to Iman Investments, N.V. (Iman) all rights and obligations under a loan agreement including G.R.P.'s option to cancel the $50,000,000 production payment. Iman had exercised this option on October 31, 1977. Thus the assignee agreed to cancel the production payment except for the $4,300,000 of the $17,500,000 which Brian had reserved to itself and assigned to others. The parties to the instrument further agreed to have the uncancelled portion fully cancelled within 30 days or to authorize Ascantia to execute and deliver to Iman a $500,000 note secured by a collateral mortgage note.
Ascantia subsequently filed for bankruptcy. On July 6, 1983, Iman purchased the property and 50% of the minerals from the Trustee in Bankruptcy.
On July 6, 1983, Iman and Champion entered into an agreement whereby Iman acknowledged Champion's mineral servitude in order to interrupt the running of prescription. In consideration thereof Champion conveyed to Iman an undivided 40% of Champion's 507 mineral servitude. On November 8, 1984, Champion granted a mineral lease to Texas Gas Exploration. Iman subsequently conveyed all of its assets to Ogeechee River Investments, Inc. (Ogeechee), the sole shareholder of Iman, on April 17, 1985. Texas Gas drilled a well on November 8, 1985, which was shut-in for lack of pipeline to transport the gas.
Brian and Brian's assignees of the uncancelled $4,300,000 production payment seek a pro rata share of the $9,531.25 monthly shut-in gas royalty. Texas Gas filed a concursus petition naming as defendants Ogeechee, Brian and persons who acquired their interests through Brian to $4,300,000 of the $17,500,000 production payment.
The parties stipulated to the above facts and filed cross motions for summary judgment. The summary judgment was granted in favor of Ogeechee and against all other defendants. In written reasons for judgment the trial court concluded that the reservation of the $17,500,000 production payment by Brian in the "Assignment of Production Payment" was invalid and the "subject to" language in the subsequent act of sale to Ascantia did not serve to create new rights or to reserve the mineral rights in favor of Brian.
From the summary judgment, various defendants appeal assigning as error:
1) the trial court's determination that a "landowner may not establish a production payment, or a mineral servitude, on its land *71 with himself as a co-owner in indivision of the mineral right."
2) the trial court's failure to conclude that Brian's reservation of the production payment and the conveyance to Ascantia were part of a single transaction.
3) the trial court's granting of Ogeechee's motion for summary judgment.
4) the trial court's determination that Brian's reservation of the production payment was extinguished by confusion.
5) the trial court's failure to determine that Brian reserved the $17,500,000 production payment when the property was sold to Ascantia.
6) the trial court's failure to find that Ascantia, Iman and Ogeechee were estopped from denying the existence and validity of the $17.5 million production payment.

EXTINGUISHMENT OF THE PRODUCTION PAYMENT BY CONFUSION
The trial court held that since Brian held title to the land it attempted to burden by the creation of a production payment to itself, that production payment was extinguished by confusion. In the first and fourth assignments of error appellants contend that at the time that Brian created the production payment and held title to the land which was burdened with the production payment, Brian was a co-owner in indivision with the original assignees of the mineral rights. Citing La.C.C. art. 765 and Allied Chemical Corp. v. Dye, 441 So.2d 776 (La.App. 2d Cir.1983), writ denied, 444 So.2d 119 (La.1984), they argue that since the qualities of ownership of the mineral royalty and the surface rights were not identical, confusion did not occur.
A production payment is characterized as a limited royalty. La.R.S. 31:16, comment. "A mineral royalty may be created either by a landowner who owns mineral rights or by the owner of a mineral servitude." La. R.S. 31:82. It is uncontested that as full owner of the title Brian could validly create the $50,000,000 production payment and assign it to various parties. The issue is whether Brian's reservation of the $17,500,000 production payment was the prohibited creation of a separate mineral estate. The statutory provisions of La.R.S. 31:72-75 pertaining to mineral servitudes are applicable to mineral royalties. La.R.S. 31:103. The parties are free to contract respecting mineral royalties and their creation except as specifically limited by La.R.S. 31:73-75. La.R.S. 31:72.
Generally, the merger of the ownership of a mineral estate with the ownership of the property which is burdened by the mineral estate extinguishes the mineral estate by confusion. La.R.S. 31:85(2); Arent v. Hunter, 171 La. 1059, 133 So. 157 (1930). Statutory exceptions to this rule are found in La.R.S. 31:66 and 67. Under La.R.S. 31:66 the "owners of several contiguous tracts of land may establish a single mineral servitude in favor of one or more of them or of a third party." Under La.R.S. 31:67, which codified the rule of Whitehall Oil Co. v. Heard, 197 So.2d 672 (La.App. 3d Cir.1967), writ denied, 250 La. 924, 199 So.2d 923 (1967), "co-owners of land constituting a continuous whole" may partition it, resulting in full ownership of the title of the newly partitioned tracts, and reserve a single servitude in favor of one or more of the former co-owners. The servitude is not extinguished by confusion even if this results in the landowner also having an ownership interest in the servitude burdening his own property.
Where co-owners of noncontiguous property partition it, resulting in full ownership of the various tracts by the participants, the partitioners may create a single mineral servitude owned in indivision by all of the participants on each tract. Confusion does not occur to extinguish the servitude owned by the party who is the full owner of the tract because under La.C. C. art. 765 the ownership of the two estates must be identical for confusion to occur. Allied Chemical Corp. v. Dye, 441 So.2d at 783. Similarly where the co-owner of a single servitude subsequently acquires full ownership of the land burdened by the servitude, confusion does not occur. Id. at 783. Where co-owners of 100% of a single servitude acquire co-ownership of 100% of the surface rights the servitude is extinguished by confusion. Mire v. Chevron *72 Oil Co., 353 So.2d 462 (La.App. 3d Cir. 1977), writ refused, 355 So.2d 256 (La. 1978).
The facts of the case before us do not fit into any of the exceptions to the operation of confusion discussed above. Brian was the full owner of the property when it created the production payment in which it reserved itself a share. Brian's reservation of the $17,500,000 production payment was the creation of a separate mineral estate which was extinguished simultaneously with the acquisition of the mineral royalty by the original assignees. Mire, 353 So.2d at 466-467. Consequently, Brian never owned the mineral royalty in indivision while owning the entire surface rights.
RESERVATION OF THE $17,500,000 PRODUCTION PAYMENT IN THE CONVEYANCE OF THE PROPERTY TO ASCANTIA
Appellants contend that Brian reserved its portion of the production payment in the act of sale to Ascantia dated October 6, 1976.
It is uncontested that as owner of the property and 50% of the mineral rights (excepting the portions of the production payment originally assigned), Brian could have reserved the mineral rights or a portion of the production payment for future assignment in the act of sale to Ascantia. Brian contends that it specifically reserved the $17,500,000 share of the production payment in the act of sale of the property to Ascantia. The document in question reads in pertinent part:
Anything contained herein to the contrary notwithstanding, this transfer is subject to that certain Assignment of Production Payment by Brian Investments, Ltd., made and executed October 1st, 1976, in favor of Robert J. Landry, Louis A. Pilie, Dr. Daniel E. Zelenka, Jack J. Reynolds, and Murray, Murray, Ellis & Braden, Attorneys, and Brian Investments, Ltd., including its transferees and assigns.
The "subject to" language generally does not operate to create new rights. It is usually interpreted to mean the recognition of rights previously in existence. Hodges v. Long-Bell Petroleum Co., 240 La. 198, 121 So.2d 831 (1959); Texaco, Inc. v. Newton and Rosa Smith Charitable Trust, 471 So.2d 877 (La.App. 2d Cir.), writ denied, 475 So.2d 1104 (La.1985). The creation of mineral rights must be expressly reserved. LeSage v. Ellerbee Builders, Inc., 424 So.2d 282 (La.App. 1st Cir.1982), writ denied, 430 So.2d 75 (La.1983). Brian did not expressly reserve any portion of its mineral rights (or create new mineral rights) in the act of sale. Since we have previously determined that the $17,500,000 production payment was extinguished by confusion, the "subject to" language operated to recognize only that portion of the $50,000,000 production originally assigned on October 1, 1976. Texaco, Inc., at 880. Thus, Brian transferred all mineral rights in the act of sale to Ascantia.
Citing Roemer v. Caplis, 369 So.2d 1186 (La.App. 2d Cir.) writ denied, 371 So.2d 620 (La.1979), appellants further argue that the Assignment of Production Payment and the Act of Sale should be viewed as one transaction.
In Roemer v. Caplis, four instruments, all dated on the same date, recorded simultaneously, and referring to each other were construed together to determine the intent of the parties. The court refused to consider any unrecorded instruments although an unrecorded instrument was referred to in the recorded instruments.
A written agreement dated October 1, 1976, between Brian, Zelenka, Reynolds, and Pollaro in which the parties agreed to form Ascantia, to transfer the property to Ascantia and stated that the parties understood that Brian would execute the production payment reserving $17,500,000 to itself. This agreement was unrecorded. Thus, it could not be considered as effective against third persons or considered to show the true intent of the parties. Roemer at 1192-1193. Further the Assignment of Production Payment was executed on October 1, 1976, and recorded on October 15, 1976; the act of sale to Ascantia was executed on October 6, 1976, and recorded on October 18, 1976. The documents were neither executed nor recorded simultaneously. Under these facts and circumstances the instruments may not be considered as a single transaction.

ESTOPPEL
In this assignment of error appellants contend that, based on the instruments *73 of public record, Ogeechee is estopped from denying that Brian created and reserved a valid $17,500,000 production payment in the sale of the property by Brian to Ascantia.
The three elements of estoppel are: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position due to detrimental reliance. Texaco, Inc., 471 So.2d at 882.
Appellants rely on the October 6, 1976, act of sale to Ascantia as the source of their rights. As discussed previously, that transaction resulted in Brian's conveyance to Ascantia of its rights to the $17,500,000 production payment. Appellants could not justifiably rely on the "subject to" language in the act of sale. Id. at 882. Thus, Ogeechee is not estopped from asserting its rights in the disputed interest. Accordingly, the granting of summary judgment by the trial court is affirmed. Costs of this appeal are assessed against appellants.
AFFIRMED.
NOTES
[1] A complete list of defendants is as follows:

Brian Investments, Ltd. Ruhrthal, Inc. S &S Trust No. 1 C. Ellis Henican D &L Realty Co., Inc. Elizabeth Cleveland Henican Emilio Garcia Dr. Francis M. Patton Dr. J. Ralph Meier Edwin Hartzman Conrad H. Franz Julia B. Lombard Peggy L. Watikins W. David DeLaureal, Sr. W. David Delaureal, Jr. Earle E. Leonard, Sr. Dr. Milton J. Becnel Rober Dyer Edward B. Decay Numa J. Martinez Naomi Sorapuru Walter Thomas Bradby Virginia Bernard Maurice M. Martinez Josepha Marie Martinez Walter R. Case Wanda Clark Priscilla H. Donaldson Kermit L. Roux, Jr. James G. Anthony Ida M. Muller Earl Muller Ethel Muller McCabe Dr. Gary Arnold Gerald C. Keller Earl E. Leonard, Jr. Dr. Karen Becnel Moore Salvatore J. Becnel Don A. Mueller Evangeline Louise Gomez James Leo McCann, Sr. James Leo McCann Ogeechee River Investments, Inc.
[2] The original assignees were the stockholders of Ascantia, thus the authority for Ascantia to authorize cancellation of the production payment.